STEVENS INSURANCE, INC., A CORPORATION, PLAINTIFF AND RESPONDENT, v. W. DEAN HOWELLS AND BERNICE HOWELLS, HUSBAND AND WIFE, D/B/A UNDER THE FIRM NAME AND STYLE OF SKYLINE CLUB ET AL., DEFENDANTS AND APPELLANTS.

No. 11782.
Decided Aug. 7, 1970.
473 P.2d 523.

Lamb & Snyder, Billings, Franklin Lamb, argued, Billings, for appellants.

Hubert T. Simmons, Jr., argued, Red Lodge, for respondent.

MR JUSTICE DALY delivered the Opinion of the Court.

This is an action to determine liability for the payment of insurance premiums. The matter was tried in the district court of the thirteenth judicial district, Yellowstone County, the Hon. Victor H. Fall presiding, sitting without a jury.

The Great Plains Life Insurance Company, of Casper, Wyoming, referred to herein as defendant, owned the Bella Vista Supper Club, near Billings, Montana, and upon the sale of this property the name was changed to Skyline Supper Club. While the club was owned by defendant, it was insured through The Bon Agency, Inc., of Casper, Wyoming.

On February 4, 1967 the defendant sold the club to W. Dean Howells and Bernice Howells, husband and wife. The security device used in this transaction was a contract for deed. The Howells defaulted in this action by failing to appear. They will be referred to herein as the Howells.

After the Howells purchased the club they obtained the insurance required in their contract through Stevens Insurance, Inc., of Red Lodge, Montana, owned and operated by its president, Alfred R. Stevens, referred to herein as plaintiff.

The Howells failed to pay the insurance premiums and plaintiff brought this action against defendant. Judgment was entered for plaintiff in the amount of $4,646 the amount of the unpaid premiums due on the policies of insurance purchased by the Howells, together with plaintiff's costs and disbursements.

Defendant contends no contract for payment of insurance premiums was proven and if the Court were to find a contract, the amount of $4,646 is in error and appeals the judgment in total.

496

■ We are here faced with a different situation than that which is presented in usual or normal appeals. From the exchange between the trial court and counsel in the record at the close of the proceedings, the court ruled defendant responsible for the premiums unpaid and ordered plaintiff to prepare findings of fact in regard to the precise amount due. In the absence of findings of fact concerning the existence of a contract, express or implied, and only a ruling as a matter of law that the premium payments were owing, this Court, as a result, has no presumption of the correctness of the trial court's findings. Accordingly, we will analyze the facts and apply the law.

On February 4, 1967 the Howells entered into a contract for deed with defendant, whereby defendant insurance company agreed to convey to the Howells certain real and personal property known as the Skyline Supper Club in Billings, formerly known as the Bella Vista Supper Club. In addition to the real property the contract included a liquor license, a beer license, and all furniture and fixtures used in connection with the club.

Paragraph 5 of the contract for deed reads as follows:

"5. *Taxes and Insurance.* Taxes for 1966 shall be paid by Seller and Buyer shall pay all taxes and assessments for the year 1967 and subsequent years until the full contract price has been paid to the Seller. *Buyer shall also purchase a policy of insurance* covering loss or damage resulting from fire or any other cause within the type of insurance designated as extended coverage, which shall be in a sum not less than $34,000.00 on Bella Vista Club and $10,000.00 on contents and boiler policy with $44,000.00 limits, such policies together with prepaid premium receipts, shall be deposited with the Escrow Agent *and shall be owned and paid for,* for the benefit of the Seller to the extent of Seller's unpaid balance and any remaining sums over and above such balance from the proceeds of any such policy shall be for the benefit of the Buyer and said policies shall have a loss payable clause attached reflecting Seller's interest therein. Buyer also agrees to save and hold Seller

harmless from all liability in connection with the property herein sold and agree to carry Public Liability Insurance in the minimum amout of $50,000.00 one person and $100,000.00 in the aggregate. Buyer shall have the option to apply any insurance proceeds paid under these provisions to reconstruct, rebuild, repair or replace the property for which the insurance was paid. Said option must be exercised within thirty days after receipt of any insurance proceeds.'' (Emphasis supplied.)

Plaintiff's case was presented by the testimony of plaintiff through its owner, Alfred R. Stevens, and the introduction of 25 exhibits. Plaintiff urges that the exhibits and testimony establish an express contract between plaintiff and defendant for payment of insurance premiums owing for the insurance purchased by the Howells. Plaintiff relies strongly on the fact that defendant with its knowledge and consent was listed as coinsured on the various policies of insurance. A number of the exhibits are memos and correspondence with The Bon Agency, which, plaintiff alleges, acted in a representaative capacity for defendant

Defendant's case was based on cross-examination of plaintiff, the introduction of the contract for deed, and an insurance billing by plaintiff through an officer of defendant.

In as much as a detailed examination of all exhibits would be unduly lengthy and many do no more than restate the plaintiff's strongest argument, we will confine this opinion to a general review and present a few examples.

Plaintiff's exhibits numbered 1 through 8 are eight policies of insurance with various papers and memos attached. These exhibits are designed to illustrate, and do, that the Howells, d/b/a Skyline Supper Club, and defendants are coinsureds rather than the Howells as insured and a loss payable clause of some kind in favor of the defendant. They also show the Midland National Bank of Billings as a loss payee. The number of policies demonstrates no more than the inability to place the risk in one company.

Other exhibits indicate that plaintiff, when requested to furnish insurance for the Howells, wrote to The Bon Agency on March 1, 1967 requesting that it endorse the Howells on the existing policies of the insurance held by the defendant as named insureds. The Bon Agency repiled on March 8, 1967 refusing to accommodate the plaintiff; but more important this exhibit seems to indicate that the matter of coinsurance was first suggested by the plaintiff and discloses that plaintiff had actual notice of the insurance agreement between the Howells and defendant. The relevant language of plaintiff's exhibit No. 12 reads as follows:

"Mr. A. R. Stevens

"J & A Marshall Insurance Agency

"P.O. Box 729

"Red Lodge, Montana

"Re: Bella Vista Supper Club Great Plains Life Insurance Company

"Dear Mr. Stevens:

"We have your letter of March 1 requesting that we endorse the policies that we have in effect covering the Bella Vista Supper Club (Skyline) to name W. Dean and Bernice Howells as named insured under the policies. In talking with the attorney here in Casper who drew the Contract for Sale *I find that it was made a part of the contract that the Howells would provide insurance on the property in an amount specified in the Contract for Sale with the Great Plains Life Insurance Company named under a Contract of Sale Clause to cover their interest in the property until such time as the conditions of the contract had been satisfied and the deed to the property would be given to the Howells.* Also in this contract, the Howells would also secure a Boiler Insurance Policy, probably through Hartford Steam Boiler, to protect this additional exposure. We do have in effect the policies that you listed in your letter and we also have a policy with the Hartford Steam Boiler covering the boiler exposure and these policies are in effect at the present

time but the reason for my letter is to advise you of the existence of the boiler policy and also to let you know our position regarding your request in your letter of March 1. * * *

"*I believe that it would be best for you to embark on an endeavor at this time to secure insurance for the Howells and allow us to terminate our policies as soon as possible.* In the meantime, I am notifying the companies that there has been a Contract of Sale made and will request the company to issue a Contract of Sale Endorsement rather than a mortgage clause so that the interests of both parties will be covered until our policies can be replaced." (Emphasis supplied.)

A communication from The Bon Agency dated March 31, 1967 to plaintiff, introduced as plaintiff's exhibit No. 13, does demonstrate that a request was made to make defendant an additional named insured under a general liability policy because The Bon Agency was not sure if Montana law placed any liability exposure on the defendant. It was also pointed out that this was contemplated at no additional charge to the Howells in the following language:

"*As you are well aware, the Bella Vista has been sold under a Contract of Sale Clause and if I remember correctly, the actual deed or title stays in the name of Great Plains until such time as the new purchasers have completed their purchase as per the agreements under the sales contract.* We felt that there could possibly be a liability exposure for the people at Great Plains and *since the new owners will be buying a General Liability Policy to cover this operation, we are wondering if we could get you to add Great Plains Life Insurance Company as an additional named insured under this policy.* In discussing this with our field representative, he indicated this could be done *without any additional charge to the present owners.* We further felt it would be advisable if the Great Plains could get a certificate of this insurance policy indicating that the insurance was in effect. .

**500**

"Again, I don't know if there could be any contingent liability attached to Great Plains because of this contract of purchase but if you could do this for us, we would appreciate it very much." (Emphasis supplied).

Plaintiff's exhibit No. 13 read together with plaintiff's reply of April 3, 1967, designated plaintiff's exhibit No. 15, certainly does not reflect an understanding between the parties other than the fact that no liability exists under Montana law but the name would be added to the policy to make defendant feel better at no additional cost. The relevant portion of exhibit No. 15 reads as follows:

"Dear Mr. Bennion:

"The new owners of the above mentioned risk have a Comprehensive General Liability Policy in effect, thru this agency, with the Hartford Insurance Group. According to Montana Law, the *Great Plains Life Insurance Company has no contingent liability* under a 'Contract of Sale' on the property. *However, to make them feel better,* I will have the Hartford name them in the policy 'as to only their interest in the Bella Vista Supper Club'. As soon as this endorsement reaches my office, I will send it to your attention:" (Emphasis supplied.)

In his brief plaintiff gives special meaning and argues at length with respect to:

"The specific consent of the defendant and appellant, GREAT PLAINS LIFE INSURANCE COMPANY, is shown in Exhibit No. 11 * * *."

Therefore, we will reproduce plaintiff's exhibit No. 11 in its entirety:

"Mr. A. R. Stevens

"J & A Marshall Insurance Agency

"P.O. Box 729

"Red Lodge, Montana 59068

"Re: W. Dean and Bernice Howells dba Skyline Supper Club (formerly Bella Vista Supper Club)

"Dear Mr. Stevens:

"Thank you for your letter of May 15, 1967, in which you enclosed policies covering the abovementioned property. We note that three policies show a mortgage clause favoring The Midland National Bank of Billings, Montana. We also note that this covers only a total of $10,000 on the furniture, fixtures and equipment in the building.

"We have no objection to this, however, we are concerned that future loss payable clause endorsements are not placed on these policies. *In view of this, we are wondering if it would not be advisable for you to issue either a contract of sale clause, a mortgage clause or some type of loss payable clause naming Great Plains Life as the favored party having an insurable interest therein.*

"We sincerely appreciate your fine cooperation and thank you for your continued assistance.

"Sincerely yours,

S/"F. Truett Neese

"F Truett Neese

"Secretary-Treasurer

"FTN:md

"P.S. We understand that that we are yet to receive a Certificate of Liability coverage on the Bella Vista property on which we are also named the Insured. I believe this was arranged between you and Mr. Bennion of The Bon Agency, Casper." (Emphasis supplied.)

 We agree that a close examination of all evidence and exhibits indicates a keen interest by defendant in the policy contents and the fire rates on the insured properties. Defendant had duplicate policies sent to it and it appears as coinsured with the Howells on various policies of insurance. The record further shows that the insurance policies were purchased by the Howells and they agreed to pay the premiums. Howells failed to pay the 1967 premium and paid nothing in 1968. Plaintiff cancelled the policies in October 1968. Plaintiff was obli-

gated to the bank in the amount of $1,365 by virtue of a recourse agreement for Howells' 1967 premium and there was owing plaintiff $2,281 for the unpaid 1968 premium.

Plaintiff's testimony establishes that the Howells contacted plaintiff to purchase the insurance; there was no additional charge to add defendant as an additional insured; only the Howells obligated themselves to the bank for the 1967 premium. No formal demand was made on the defendant for the 1967 premium. No statements were rendered to the defendant for any premiums. On June 25, 1968 a statement for the full amount of the premium, $5,915, was rendered by plaintiff to Skyline Supper Club, Box 1792, Billings, Montana. No written demand for premium payment was made on defendant until September 25, 1968. (Suit was commenced October 17, 1968).

Plaintiff testified he was familiar with the real estate business and a contract provision for purchasers to pay insurance was a customary requirement in practically any contract for sale. Plaintiff's own exhibit No. 12 and other references advised plaintiff of the contract terms in relation to the insurance obligations between the Howells and the defendant.

In American Equitable Assurance Co. v. Newman, 132 Mont. 63, 313 P.2d 1023, this Court had under consideration the question of the right of a seller to the proceeds of an insurance policy required by a mortgage or contract, whether or not this interest was disclosed by an endorsement on the policy. This Court said its issuance is of no consequence. The seller or mortgagee is entitled to the proceeds, in the event of loss, on the basis of an equitable lien.

When this rule is applied here, the issuance of the requested contract of sale clause or the listing of the defendant as an additional insured, gave the defendant nothing of value or advantage it did not already have.

Section 13-101, R.C.M.1947, defines a contract as follows:

"A contract is an agreement to do or not to do a certain thing."

Section 13-102, R.C.M.1947, specifies the essential elements of a contract:

"1. Parties capable of contracting;

"2. Their consent;

"3. A lawful object; and

"4. A sufficient cause or consideration."

There are only two kinds of contracts Section 13-106, R.C.M. 1947, provides:

"A contract is either express or implied."

Section 13-602, R.C.M.1947, reads:

"An express contract is one the terms of which are stated in words."

Section 13-301, R.C.M.1947, states that consent of the parties to a contract must be:

"(1) Free;

"(2) Mutual; and,

"(3) Communicated by each to the other."

A careful review of all of the evidence in this transaction reveals that the parties understood from its inception that the Howells were obligated to purchase insurance and further the Howells did purchase the required insurance and obligated themselves to pay the premiums. The same examination fails to reveal any promise or consent necessary to form an express contract between plaintiff and defendant for the payment of premiums for the insurance purchased by the Howells. If one could be found, there is no sufficient cause or consideration to support a contract. The plaintiff himself testified that he never formally demanded any payment from the defendant until September 25, 1968 and commenced suit October 17, 1968. The entire course of conduct in this matter could not reasonably be viewed as indicating that the parties had at any time any agreement concerning the payment of the Howells' insurance premiums.

We do not agree with plaintiff's argument that the defendant being named as a coinsured on policies of insurance and accepting the designation, in itself, obligates the defendant to pay the premiums for the policies of insurance.

Similar cases have arisen in other jurisdictions and the results are not in conflict. The rule consistently applied is that unless there is a promise by the mortgagee or lessor to pay the premiums there is no liability. Century Insurance Agency Inc. v. City Commerce Corp., Alaska (1964), 396 P.2d 80, 81, presents a situation wherein a lessor contracted with a lessee for lessee to purchase insurance and in this case the lessee purchased the insurance in lessor's name and the policy was delivered to lessor. The court said:

"The fact that the insurance policy was issued in appellee's name and for its benefit and delivered to appellee did not give rise to a justifiable expectation on appellant's part that apellee had undertaken to pay the cost of the insurance."

The court also commented:

"In order for there to be a contract there must have been a promise by the lessor to pay the insurance premiums."

See also Northern Assur. Co. v. Goelet, 69 App.Div. 108, N.Y.S. 553; General Credit Corp. v. Imperial Casualty & Ind. Co., 167 Neb. 833, 95 N.W.2d 145.

We recognize the argument that in the Alaska case, heretofore cited, there was no contact or negotiation between the lessor and insurance company yet this does not change the status of a co-insured unless he has made an additional promise or contract to pay premiums of insurance

The plaintiff's allegation that The Bon Agency was acting in a representative capacity for the defendant will not be discussed as it would not change the result, if this point were conceded.

We have taken note of the various Montana Code sections discussed by the parties and find nothing, when applied to the facts of this case, to change the results.

The judgment is reversed and the cause dismissed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES, and HASWELL concur.