Doreen C. MANN, Plaintiff,

v.

**GLENS FALLS INSURANCE COMPANY, Defendant.**

Civ. No. R–2847 BRT.

United States District Court,
D. Nevada.

June 19, 1974.

Breen, Young, Whitehead & Hoy, Reno, Nev., for plaintiff.

Richard P. Waite, Reno, Nev., Jerome F. Downs, San Francisco, Cal., for defendant.

## OPINION

BRUCE R. THOMPSON, District Judge.

This is an action by Doreen C. Mann, a retired music teacher, residing in Reno, Nevada, and a citizen of Nevada, against the defendant, Glens Falls Insurance Company, a citizen of the State of New York. The jurisdiction of this Court is based upon diversity of citizenship and the amount in controversy. 28 U.S.C. § 1332.

On August 19, 1969, in consideration of a premium of $375, paid by plaintiff to defendant, defendant issued to plaintiff a fire insurance policy covering her dwelling house located on real property owned by her approximately five miles east of Fernley, Nevada in the County of Lyon. The policy covered a period of three years from August 19, 1969 to August 19, 1972. The policy, as originally written, was a standard owner's fire insurance policy with a mortgage clause, that is, a loss payable clause, to the Security National Bank of Nevada which, at that time, apparently had a security interest in the property.

On April 14, 1972, plaintiff sold the property to Loren J. Bates and Timothea Bates for $25,000. She received $2,000 cash down payment, the balance of the purchase price being represented by a promissory note in the amount of $23,000 payable at $150 per month, secured by a deed of trust on the

property. The only memorialization of the agreement between plaintiff and Mr. and Mrs. Bates is contained in the escrow instructions which provided that "fire insurance as handed you" would be pro rated to the close of escrow. The deed of trust to be executed by the purchasers deposited in escrow did not require the trustor to purchase fire insurance with loss payable clause for the benefit of plaintiff. At the close of escrow, the insurance policy was returned to plaintiff. Plaintiff testified that she intended to maintain the insurance policy until the purchasers obtained other insurance and that after the fire loss, she and Mr. and Mrs. Bates agreed to use the insurance proceeds to rebuild the property. However, the terms of the contract between plaintiff and Mr. and Mrs. Bates with respect to insurance were not in issue in this action and neither Mr. Bates nor Mrs. Bates testified. It is possible that if the insurance indemnity had been paid by defendant to plaintiff and plaintiff had refused to divert the proceeds to rebuilding the residence, an action might have been instituted by Mr. and Mrs. Bates to require this disposition of the proceeds and, in such an action, the full terms of the rather indefinite agreement on the sale of the property might have been fully developed and decided.

On May 12, 1972, the dwelling house on the property was destroyed by fire. Plaintiff promptly informed the insurance carrier. After investigation, the adjuster determined that the replacement cost of the structure was approximately $19,600; that the actual cash value was probably in the area of $16,000; and that the value of the land was approximately $6,000. It was determined that plaintiff had suffered a loss in the full amount of the policy, that is, $15,000.

Plaintiff repeatedly informed defendant, through defendant's agents and adjusters, of her financial dependence on the payments from the mortgage on the property, of the inability of herself or the mortgagors to reconstruct the property without the insurance proceeds, and of the fact that Mr. and Mrs. Bates were camping on the property pending reconstruction in an attempt to honor the obligation under the note and deed of trust. The adjusters gave repeated assurances that plaintiff's loss would be settled under the policy.

The Underwriters Adjusting Company, the claims facility and adjusters for defendant, recommended payment to plaintiff of the sum of $15,000 on the condition that plaintiff execute a partial assignment to defendant of her interest under the Bates note and deed of trust to the extent of the indemnification paid. The law firm of Vargas, Bartlett & Dixon of Reno, Nevada, was requested to prepare such an assignment and Mr. Roger Newton of that firm, on July 27, 1972, after reviewing the facts, advised the defendant company that to demand an assignment "would be imposing conditions, not a part of the contract of insurance, upon the insured for the purpose of attempting to recover monies to which they are not entitled." Defendant, through the Underwriters Adjusting Company, then requested the opinion of the law firm of Thornton, Taylor & Downs. Mr. Jerome F. Downs of that firm, quoting the subrogation clause of the insurance policy, reached the conclusion that the defendant was entitled to demand a partial assignment. In his opinion letter of August 7, 1972, Mr. Downs stated:

"If the insurer is not permitted to subrogate here, it means Mann will be paid twice, once by the insurer and once in accordance with the terms of the Bates' promissory note. The authorities are uniform that where an owner of property stops being an owner and becomes a mortgagee, the insurable interest in the premises is retained, but only as a mortgagee. As the policy also contains the covenant for subrogation quoted above, the assignment of the deed of trust is authorized to prevent unjust enrichment of the insured.

"The fact of this assignment will undoubtedly engender a complaint by Bates as he asserts he intended to have the benefit of the insurance. The intention is probably true. However, he did not do the things necessary to secure this bene-

fit. The file suggests he was negligently treated by the escrow holder whose duty it usually is to see that the new owner is properly insured. There may also be negligence on the part of counsel. The deed of trust is on a form bearing the name of Breen, Young, Whitehead and Hoy, Attorneys at Law in Reno. If the law firm drew the deed of trust as part of a legal service rendered to Bates, it failed to properly provide for the protection of its client, and is accordingly answerable in damages."

Mr. Downs submitted with his letter a form of absolute assignment to Glens Falls Insurance Company of plaintiff's rights under the Bates note and deed of trust to the extent of $15,000 subject to the prior claim of plaintiff under that note to the unpaid balance.

After receipt of the foregoing letter, the adjusters informed plaintiff that the claim would be paid if and only if she would execute the assignment. Plaintiff refused to make the assignment after consulting with her attorney. She countered with an offer to enter into an agreement with defendant to the effect that the insurance proceeds would be devoted to reconstructing the dwelling on the property. Defendant rejected this solution. Thereafter, on February 27, 1973, plaintiff instituted this action on the policy seeking actual damages, consequential damages and punitive damages. As recently as June 11, 1973 (Exhibit 8), plaintiff offered to accept payment of the face amount of the policy, plus interest in full settlement of the litigation. The offer was not accepted.

As a direct and proximate consequence of defendant's failure to pay the indemnity provided by the insurance policy, Mr. and Mrs. Bates were unable to make the payments on the note and deed of trust, and, on June 4, 1973, plaintiff accepted from Mr. and Mrs. Bates a reconveyance of the property, that is, a "deed in lieu of foreclosure," which recites that it is accepted in full satisfaction of all obligations secured by the deed of trust on the property reconveyed. The property, on April 14, 1972, before the fire, had a fair market value of $25,000, this being established by the arms-length sale consummated at that time. At the time of the fire, approximately $23,000 remained due and unpaid on the purchase price. After the fire, the value of the unimproved land was between $6,000 and $9,000.

After the fire, plaintiff's income (that is, money available for living expenses) consisted of approximately $300 per month realized from Social Security benefits and the proceeds of sales of other property. The loss of $150 per month from Mr. and Mrs. Bates on the note and deed of trust compelled plaintiff to live in a converted storeroom lacking any heating outlets and lacking space in which to place her furniture. The loss of the additional cash income has forced plaintiff to forego her customary program of medical care and particularly the care of her eyes and teeth. Plaintiff has been compelled to continue in her present inadequate housing and has been severely limited in her normal social, cultural and business activities for lack of transportation.

After plaintiff was compelled, by the circumstances due to defendant's failure to pay the indemnity provided by the fire insurance policy, to accept the deed in lieu of foreclosure, and after her attorney's letter of June 11, 1973, Exhibit 8, informing defendant of this event and offering to accept the policy proceeds in full settlement of the pending litigation, the only response by defendant was to assert her acceptance of the deed in lieu of foreclosure as an additional defense to its liability under the fire insurance policy. Defendant at this time knew and at all pertinent times knew that the fire loss had destroyed approximately two-thirds of the market value of the property insured and that the property which was the subject matter of the note and deed of trust was then security for not less than $8,000 of the balance remaining due and unpaid under the note and deed of trust.

■ *The Requirement of an Assignment.* There is no dispute that proof of loss was made and that plaintiff has complied with all the conditions of the policy entitling her

to payment of the indemnity except for the requirement insisted upon by defendant that she execute a partial assignment of her rights under the note and deed of trust. These matters were settled by July 27, 1972 and payment of the indemnity became due at that time.

Defendant, despite plaintiff's repeated demands for payment, refused to pay the loss. Defendant attempts to justify its refusal to pay upon plaintiff's refusal to execute a partial assignment of the deed of trust. In the opinion letter from Mr. Downs, the justification for the requirement was predicated on the "subrogation" clause of the policy: "This company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this company." (Lines 162–165 of the policy.) Defendant's reliance on this provision is misplaced. This type of subrogation clause applies only to cases in which there exists a cause of action against a third party wrongdoer whose actionable conduct was responsible for the loss insured against. *Langhorne v. Capital Fire Insurance Co.,* 54 F.Supp. 771 (D.Minn.1944); Vol. 6A, Appleman, Insurance Law and Practice, § 4053, p. 139. There is no allegation in the present case and no evidence to support an allegation that the mortgagors or anyone else were actionably liable for the instant fire. During pre-trial proceedings, by failing to respond to a request for admissions, defendant admitted that it knows of no person responsible for the loss. This clause of the insurance contract, by its plain terms, applied only to a "right of recovery against any person for loss." Plaintiff's right against Mr. and Mrs. Bates on the note and deed of trust are plainly not rights of recovery for loss. It is difficult for this Court to see how any attorney could interpret the language of the subrogation clause as requiring a partial assignment of the note and deed of trust.

Further, an insurer who has neither made payment nor tendered payment on a loss is not entitled to an assignment under a subrogation clause. *Pennsylvania Co. for*

*Ins. v. Aachen and M.F. Insurance Co.,* 257 F. 189 (E.D.Pa.1919). There is no evidence of payment or tendered payment in the present case.

Secondly, in this action defendant relies on the provisions of the policy respecting "mortgagee interests and obligations" (Policy, lines 78–82): "If this company shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's rights to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage." It is interesting to note that in his opinion letter of August 17, 1972, Mr. Downs did not rely upon this provision of the policy in support of his conclusion that a partial assignment could be required although he did allude to it, stating: "It also contains a statutory mortgagee clause providing for mortgage subrogation." By the terms of the policy, as well as by accepted principles of subrogation law, the right to subrogation does not arise until payment has been made. 16 Couch on Insurance 2d, sec. 61, p. 372; Vol. 6A Appleman, Insurance Law and Practice, sec. 4073. When the policy insures the interest of the mortgagee alone, it plainly states that the insurer is entitled to demand an assignment only if it pays off the balance due on the obligation secured by the mortgage or deed of trust in full. Almost all the cases relied upon by defendant are of this kind. *Wriedt v. Beckenhauer,* 183 Neb. 311, 159 N.W.2d 822 (1968); *Commercial Standard Insurance Co. v. Hittson,* 73 N.M. 328, 388 P.2d 56 (1963); *American Insurance Co. v. Hattaway,* 194 Ga. 15, 20 S.E.2d 406 (1942); *American Equitable Assurance Co. v. Newman,* 132 Mont. 63, 313 P.2d 1023 (1957); *Kimberley & Carpenter v. Fireman's Fund Insurance Co.,* 78 F.2d 62 (3rd Cir. 1935); *LeDoux v. Dettmering,* 316 Ill.App. 98, 43 N.E.2d 862 (1942). When the insurer fails or neglects to pay the mortgage debt in full to the insured, thus entitling it to an assignment, the provisions of the policy entitling it to subrogation are self-executing if the circumstances of the

case justify subrogation in equity. Such a provision of the policy is nothing more than an expression of the common law equitable right to subrogation and is to be interpreted in the light of established equitable principles. *Wriedt v. Beckenhauer, supra; American Equitable Assurance Co. v. Newman, supra.* "The equitable doctrine of subrogation is applicable in aid of an insurer only where the insurer has some right which equity recognizes, to be furthered thereby." 44 Am.Jur.2d, § 1820, p. 747. "Traditionally the common law viewed subrogation as a principle of equity created to place the loss upon the person who in good conscience and justice should bear it. The facts and circumstances of each case were examined to determine which party had the greater equity." 56 Minn.Law Rev., p. 274. Appleman, in Vol. 6, Insurance Law and Practice § 4054, said: "The doctrine of subrogation does not depend primarily upon statutory or policy provisions, but originates in the general principles of equity, and will be applied or not according to the dictates of equity and good conscience and considerations of public policy. Such doctrine is founded upon the relationship of the parties and upon equitable principles, for the purpose of accomplishing the substantial ends of justice. Subrogation rests on the maxim that no one should be enriched by another's loss."

We have shown that the defendant was not entitled to an assignment except on full payment of the mortgage debt. It is not entitled to subrogation unless it pays. If defendant had paid plaintiff the $15,000 due, it had by contract whatever rights the contract gave it to partial subrogation. If it had paid and sued on the contract for partial subrogation, whether or not it should be subrogated would depend on what the facts showed in the light of established principles of equity.

This brings us to the questions of double recovery and what alternatives the mortgagee has with respect to disposition of the proceeds of fire insurance for loss on the insured property. There is a dearth of precedent on these questions in instances where only the mortgagee's insurable interest in the property is covered by insurance. The authorities we have found deal with instances where fire insurance insures the mortgagor with loss payable clause to the mortgagee. In such cases, it is no business of the insurers whether the proceeds of insurance are applied against the mortgage debt or are used to restore or replace the damaged property. Vol. 5, Couch on Insurance 2d §§ 29:89 to 29:95. In the present case, assuming that the Bates had no interest in or claim to the insurance proceeds, plaintiff, if she had been paid, might have pocketed the money; in which event defendant should have been entitled to its partial subrogation, for whatever it might have been worth. We think it clear, however, that plaintiff also had the option of using the insurance proceeds to reconstruct the damaged property and restore her security. Defendant argues, and we recognize it to be true, that "it is a principle of long standing that a policy of fire insurance does not insure the property covered thereby, but is a personal contract indemnifying the insured against loss resulting from the destruction of or damage to his interest in that property." *Russell v. Williams*, 58 Cal.2d 487, 24 Cal.Rptr. 859, 374 P.2d 827 (1962). In the present case, the insurable interest of the insured in the property consisted of her rights under the deed of trust as security for the note in the amount of $23,000. It is also true, however, that the fire insurance policy protected the insured against damage to or destruction of the residence on the property. While the value of her insurable interest in the property must be measured by the amount remaining due on the obligation secured by the deed of trust, it was the residence which was insured, not the debt. The insurance policy did not in any sense indemnify the insured against loss for non-payment of the debt. It indemnified her against loss for diminution of the value of the property which was security for the debt. If the insurance policy is interpreted as a guarantee of payment of the debt, then the only alternative of the insured is to apply the proceeds in full or *pro tanto* satisfaction of the debt; but if, as

seems obvious to us, the policy does not guarantee the debt but insures the plaintiff against loss on account of damage to or destruction of the property, she plainly has the right to apply the proceeds to restore the value of her security for the obligation. The obligation represents an investment which plaintiff made. To protect the investment, she purchased insurance. This personal contract indemnifying her against loss left her with the option, upon receipt of the insurance proceeds, of either pocketing the money or, if in her judgment it seemed best, to use the money to reconstruct the property and restore the security for the obligation. In either instance, her personal loss would be indemnified and this was the express purpose of the insurance contract which provides that it "insures the insured named above against all direct loss by fire to the property."

The desirability of such a conclusion is made evident if we postulate the following facts: Mortgagee insurance on an office building which is partially damaged by fire; the mortgage carries twelve per cent interest with non-accelerable monthly payments; it was negotiated by the husband before his death for the financial security of the widow; the mortgagor cannot repair the damage. If the mortgagee-widow cannot, in this situation, use the fire policy proceeds to restore the investment, the property insurance laws of this country are sadly in need of revision.

What are the equities to be considered to justify a recognition of denial of subrogation in the premises. The two most frequently emphasized factors have been (1) the prevention of double recovery (unjust enrichment); and (2), as between the insurer and a tortfeasor causing the loss, the latter should bear the loss. 56 Minn.L.R. 274. The second consideration is not applicable here. The first would be applicable only if the insured chose not to restore the damaged property but used the insurance proceeds for other purposes. There can be no unjust enrichment if the insurance proceeds are used to repair the damage. The insured is simply restored to the status quo ante.

"The maxim or doctrine appellees rely upon is that no one shall be allowed to unjustly enrich himself at the expense of another. The word 'unjustly' as so used means 'unlawfully.' *Sheasgreen Holding Co. v. Dworsky*, 181 Minn. 79, 231 N.W. 395 (1930); *American University v. Forbes*, 88 N.H. 17, 183 A. 860 (1936); *Greenwich Contracting Co. v. Bonwit Const. Co.*, 156 Conn. 123, 239 A.2d 519 (1968). One who is free from fault cannot be held to be unjustly enriched merely because he has chosen to exercise a legal or contract right. *Worthen Bank & Trust Co. v. Franklin Life Ins. Co.*, 260 F.Supp. 1 (D.C.Ark.1966), aff'd 370 F.2d 97 (8th Cir. 1966); *Pelser v. Gingold*, 214 Minn. 281, 8 N.W.2d 36 (1943). One is not unjustly enriched by receipt of that to which he is legally entitled. *American University v. Forbes*, supra.

"As appropriately stated by District Judge Henley in the *Worthen* case, 'Parties to business transactions are required to act justly and honestly, but they are not required to act unselfishly or altruistically.' A moral duty does not meet the demands of equity in this regard, in the absence of some specific legal principle or situation which equity has established or recognized bringing a case within the scope of the doctrine. *American University v. Forbes*, supra. *Anderson v. Anderson*, 155 Kan. 69, 123 P.2d 315 (1942). No recovery of money received can be based upon unjust enrichment when the recipient can show a legal or equitable ground for keeping it. *Beauregard v. Orleans Trust Co.*, 108 Vt. 42, 182 A. 182 (1936)." *Whitely v. Irwin*, 465 S.W.2d 906, at 910–11 (Ark.1971).

■ An insurance company which complies with its obligation to pay the loss must await the event before a court of equity can determine whether it is entitled to subrogation. The following authorities, while not controlling, deal with and support the mortgagee's right to use the insurance proceeds to restore the damaged security. *Hartford Fire Insurance Co. v. Bleedorn*, 235 Mo.App.

286, 132 S.W.2d 1066, at 1072; *Northwestern National Ins. Co. v. Mildenberger*, 359 S.W.2d 380, at 385 (Mo.App.1962); 5A Appleman "Insurance Law and Practice," Sec. 3387, p. 275;[1] 5 Couch on Insurance 2d, Sec. 29:96, p. 378;[2] *Haskin v. Greene*, 205 Or. 140, 286 P.2d 128 (1955).

### The Deed in Lieu of Foreclosure.

■ Defendant would now avoid liability on the policy based on plaintiff's acceptance of a deed in lieu of foreclosure from the mortgagors. Two distinct theories are offered in support of defendant's position.

One such theory excuses the insurer's performance on a loss under a fire insurance policy where the mortgagee's actions subsequent to the loss prevent the insurer from obtaining the subrogation right against the mortgagor as provided in the contract. In *Insurance Company of No. America v. Citizens Insurance Company of New Jersey*, 425 F.2d 1180 (7th Cir. 1970), the mortgagor defaulted on the mortgage prior to the fire loss. Shortly thereafter, the mortgagee accepted a deed in lieu of foreclosure and cancelled the mortgage debt. The property had been insured against fire by the mortgagor's policy with the defendant. The mortgagee had been insured additionally by a policy with the defendant against losses due to the errors or omissions of the mortgagee's agents. The suit was brought to determine which insurer was liable for the loss. The issue was whether the acceptance of the deed by the mortgagee's agents extinguished the right of the fire insurer to be subrogated to the mortgagee's rights against the mortgagor in which case the fire insurer would be relieved of liability. The Court held that acceptance of the deed relieved the fire insurer of liability because the mortgagee thereby prevented the insurer from obtaining the subrogation to which it was entitled by contract.

*Insurance Co. of No. America* is distinguished from the present case by the present defendant's breach of the insurance contract prior to the mortgagee's acceptance of the deed. As discussed *supra*, the insurer's right to subrogation is subject to the condition precedent that the insurer pay the loss. The insurer's breach of its duty to pay brings into play a principle of basic contract law:

"When a contractual duty is subject to a condition precedent * * * there is no duty of immediate performance and there can be no breach of that contractual duty by mere nonperformance, unless the condition precedent is either performed or excused. If such a condition precedent is neither performed or excused within the time that is required, such failure now makes it impossible for a breach of contract to occur." 6 Corbin on Contracts, § 1252, p. 2.

The defendant's payment of the loss was a condition precedent to implementation of its rights to subrogation. Defendant breached its duty to make this payment. Defendant's breach of the condition precedent excused plaintiff's performance of the implied duty to preserve the insurer's subrogation rights imposed by *Ins. Co. of No. America.*

Another basic principle of contract law is also material to the present question:

"In any kind of contract, if the right of one party to compensation is conditional upon the rendition of some service or other performance by him or on his behalf, it is nearly always a breach of contract for the other party to act so as to prevent or to hinder and delay or to make

1. "If the mortgagor and mortgagee orally agreed that the proceeds of a fire policy should be applied as a credit on the mortgage note, they had a right to change such agreement by restoring the improvements." 5A Appleman "Insurance Law and Practice," § 3387, p. 275.

2. "When a fire insurance policy contains a stated mortgage clause in favor of the mortgagee, and a loss occurs at a time when the mortgage is overdue and in default, the loss being less than the amount of the mortgage, the mortgagee is the real party in interest and entitled to the proceeds and may decide whether the money is to be applied to the mortgage obligation or is to be used to repair the premises." 5 Couch on Insurance 2nd, § 29:96, p. 378.

more expensive the performance of the condition." 3 Corbin on Contracts, § 571.

Defendant would have us believe that plaintiff's right to payment is conditional on her ability to provide defendant with subrogation rights against the mortgagors. Defendant's breach of its duty to pay the loss hindered plaintiff's performance and rendered it more expensive. The evidence shows that defendant's refusal to pay the claim precluded plaintiff from rebuilding the house, forcing, in turn, the mortgagors to default on the loan. Defendant argues that plaintiff had the duty to protect subrogation rights by foreclosing on the mortgage, thereby preserving the insurer's possible rights against the mortgagors for any deficiency. Defendant therefore argues that once it had breached the contract, plaintiff could not follow the expedient course of deed in lieu of foreclosure but rather must pursue the more expensive and time-consuming remedy of foreclosure. Once defendant breached this contract in the manner it did, plaintiff was entitled to protect her interests in the most efficient manner available. Once the insurer breaches its duty to pay an insured loss, the insured is relieved of any implied duty to protect the insurer's further rights where taking the measures necessary to protect those rights conflicts with the best interests of the insured.

Defendant also cites *Rosenbaum v. Funcannon*, 308 F.2d 680 (9th Cir. 1962). The theory there asserted is not that the insurer's contract right to subrogation was extinguished by acceptance of the deed in lieu of foreclosure but that the deed extinguished and satisfied the debt itself, thereby eliminating any loss for which the insured might recover.

In *Rosenbaum*, the mortgagor owned the policy. After the fire, the mortgagor defaulted, prompting a foreclosure sale. The mortgagee, prior to any payment on the insurance policy, successfully bid the entire value of the outstanding mortgage debt as opposed to the actual value of the fire-damaged property, thereby cancelling the mortgage indebtedness. The Ninth Circuit held that extinguishment of the debt itself, as opposed to extinguishment of the mortgage or the deed of trust, precluded the mortgagee's recovery on the policy.

The "Deed in Lieu of Foreclosure" (Exhibit 4) indicates that part of the consideration therefor is the "full satisfaction of all obligations secured by the deed of trust." There can be no question that this language evidences an intention that the debt underlying plaintiff's interest in the property was thereby extinguished. If *Rosenbaum* applies to the present case, therefore, the plaintiff's acceptance of the deed must be held to preclude her recovery on the policy.

*Rosenbaum* is distinguishable from the present case in that the mortgagee in this case is the owner of the policy rather than the loss-payable mortgagee on a policy owned by the mortgagor. The Court here is dealing with the right of the insured policy owner vis-a-vis the insurer rather than the right of the loss-payable mortgagee vis-a-vis the mortgagor policy owner. It is significant that defendant has been unable to cite one case in which the insurer has avoided liability by reason of a foreclosure or similar proceeding after the fire loss but prior to payment on an insurance policy. Rather, in *Rosenbaum* and in *Northwestern National Insurance Co. v. Mildenberger*, 359 S.W.2d 380 (Mo.App.1962), the insurer acknowledged liability so that the only question was which of two parties had the superior right to the proceeds.

The most direct authority we have found in support of defendant's contention is *Whitestone Savings and Loan Association v. Allstate Insurance Company*, 28 N.Y.2d 332, 321 N.Y.S.2d 862, 270 N.E.2d 694 (1971). The wooden, formalistic reasoning of the majority of that Court has little persuasive appeal. We commend and approve the opinion of Judge Scileppi in dissent. He makes the following irrefutable points: First, that the authorities relied on by defendant here, and cited in the *Whitestone* opinions, are not cases in which the insurer is relieved of liability; they concern the issue of who, as between the mortgagor and mortgagee is entitled to the insurance pro-

ceeds after a post-fire loss satisfaction of the mortgage debt and for the most part, involve mortgagor insurance with a loss payable clause to the mortgagee; second, the question of whether the mortgage debt was actually satisfied by the post-loss transactions is one of fact; third, that the post-loss transactions between the mortgagor and mortgagee concern only their rights as between themselves and cannot be relied on by a third party to avoid liability on a lawful claim; fourth, that the insurer cannot defeat the claim by its inaction after loss has occurred and its liability has become fixed; fifth, if the insurer desires immediate subrogation, its remedy is to pay the mortgage debt in full and take an assignment and, if it fails to do so, the mortgagee may proceed to protect her interests as best she is able; and sixth, as between the insurer and insured, the rights become fixed at the time of the loss. These conclusions seems to us to be eminently sound, both as general principles of insurance contract law and as applied to the facts of our particular case.

Finally, this Court must question the *Rosenbaum* decision in the light of the California "Change of Interest After Loss" statute in effect since 1935:

"A change of interest in a subject insured, after the occurrence of an injury which results in a loss, does not affect the right of the insured to indemnity for the loss." Ins.Code, § 301.

This statute would seem to protect the interest of a mortgagee bidding the entire mortgage debt at a foreclosure sale as in *Rosenbaum*, and yet no reference to this statute appears in that decision.

We are particularly distressed by the prospect of *Rosenbaum's* application to the present case because a legal fiction is thereby thrust in the teeth of contrary and irrefutable fact. *Rosenbaum* construes the deed in lieu of foreclosure to cancel the debt and eliminate the loss. The facts of the present case indicate clearly that plaintiff, by acceptance of the deed in lieu of foreclosure, reacquired sole ownership of an unimproved parcel of land which defend-

ant's agent valued in the area of $6,000 (see Exhibit 10) in exchange for mortgagor's obligation of $23,000. The difference in value is, of course, the value of the burned house. Plaintiff, therefore, suffered a conservatively estimated loss of $17,000 in the fire and yet she is deemed to be made whole by the deed back of the property.

A similar situation occurred in *Gattavara v. General Insurance Company of America*, 166 Wash. 691, 8 P.2d 421 (1932). There the Washington Supreme Court treated the question of unjust enrichment as one of fact, not of legal fiction, and said:

"Finally, the appellant contends that if the judgment is allowed to stand the respondent will reap double recovery—one against the appellant and the other against the mortgagor, Schaide. This argument, while engaging, is not persuasive. September 10, 1929, the respondent brought this action to foreclose the chattel mortgage against Schaide, and prayed for judgment in the sum of $13,659.12. On September 23, 1929, the respondent and Schaide entered into a written agreement of settlement adjusting all disputes or claims between them relating to various logging operations. At that time Schaide owed the respondent approximately $13,000. When the truck was destroyed the respondent's security was impaired to the extent of the value of the truck. In the settlement between the respondent and Schaide the latter was given credit for whatever amount the respondent would recover against the appellant by reason of the destruction of the truck. Under these circumstances there would be no double recovery."

For these reasons, this Court is reluctant to apply *Rosenbaum* to the present case. Although we believe that the distinctions cited above provide adequate basis for avoiding *Rosenbaum*, even assuming *arguendo* that the case is controlling on the present issues, it is the Court's conclusion that defendant is estopped from asserting the defense thereby provided.

" '[Estoppel in pais] holds a person to a representation made or a position as-

sumed where otherwise inequitable consequences would result to another who, having the right to do so, under all of the circumstances of the case, has in good faith relied thereon and been misled to his injury.' 19 Am.Jur. 642, estoppel § 42 (1st ed. 1939); see *Noble Gold Mines Co. v. Olsen,* 1937, 57 Nev. 448, 66 P.2d 1005; *Beck v. Curti,* 1935, 56 Nev. 72, 45 P.2d 601." *Bankers Trust Co. v. Pacific Employers Insurance Co.,* 282 F.2d 106, 112 (9th Cir. 1960).

Plaintiff was, of course, entitled to rely on the representations and actions of defendant, acting through its agents, with regard to the status of her loss under the policy. The evidence shows that the position consistently taken by defendant was that the policy was valid, plaintiff had an insurable interest and had suffered a loss to that interest and that the loss was protected against by the policy. The only question as to her recovery was the right of the company to condition this payment on the requirement of plaintiff's execution of an assignment.

■ Defendant took this position by the statements of its adjuster Snellgrove that the loss would be settled. It further established this position by Snellgrove's presentation of the assignment document for plaintiff's signature and his assurances that payment would be forthcoming on the execution of that document. By these acts, plaintiff became entitled to rely on defendant for payment of the loss once the question of the assignment was resolved. Defendant's representations, therefore, induced plaintiff to accept the deed in lieu of foreclosure with the expectation that the value of the land thereby acquired would be added to the proceeds from the policy nearly compensating her for the pre-fire property value.

Plaintiff was further lulled into acceptance of the deed by defendant's silent affirmation of that course of action. The evidence shows that plaintiff repeatedly advised defendant of the importance of applying the proceeds to reconstruction of the property so that the mortgagors might con-tinue living there and honoring their debt. Defendant was fully aware of the mortgagors' lack of insurance on the property and their consequent inability to reconstruct it themselves. See Exhibits 10 and 12. Defendant's local counsel predicted the likelihood of the mortgagors' default:

> "It is possible that the purchasers (Bates) might continue to pay Mrs. Mann monthly installment payments in accord with the terms of the note but this would only be a practical assumption if in fact Mrs. Mann would rebuild the residence structure. *It is most probable, however,* that the purchasers would not continue to pay under the contract of sale after the destruction of the house even if Mrs. Mann instituted action to recover under the Note and Deed of Trust." Exhibit 7, letter from Attorney Newton to Senior Adjuster Shepard. (Emphasis added.)

Plaintiff has paid the premiums on a policy of insurance with defendant. The risk insured against occurred and defendant acknowledged liability. Relying on this acknowledgment, plaintiff accepted the deed back without thought that this action might alter her rights under the policy. To permit defendant to now assert that no loss under that policy occurred would result in plaintiff's damage to the extent of the value of the policy. The conclusion is, therefore, inescapable that defendant is estopped from raising a defense based on *Rosenbaum* or *North American Ins. Co.*

■ *Compensatory and Punitive Damages.* Plaintiff seeks compensatory damages for defendant's breach of the implied covenant of good faith and fair dealing.

> "There is no doubt that, in performance of its duty to indemnify the insured, the insurer is bound to exercise 'good faith' and to act fairly in the interests of the insured." 3 Corbin on Contracts, § 527A, p. 355.

This theory is applied in *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973). There the plaintiff, whose burned restaurant was insured by the defendant, alleged that the defend-

ant's agent made false statements to the policy, implying that plaintiff had been guilty of arson in connection with the fire. It was also alleged (and accepted as true for the purposes of considering the complaint's validity on the demurrer) that the criminal charges brought against plaintiff were dismissed. While these charges were pending, however, the defendant had given plaintiff notice to appear for questioning as required by the policy. It was alleged that the defendant made the demand at such a time knowing that plaintiff, facing criminal charges, would not answer their questions. Defendant subsequently denied liability based on plaintiff's refusal to answer the questions as the policy required. Defendant adhered to this position despite plaintiff's offer to answer the questions immediately after the charges were dropped. Although this offer came only a month after the defendant had made its demand, it refused the offer.

The California Supreme Court (with Justice Pro Tem Roth dissenting) held that the allegations of the complaint, if proved, would entitle the plaintiff to recovery:

"The duty of an insurer to deal fairly and in good faith with its insured is governed by our decisions in *Crisci v. Security Ins. Co.* (1967) 66 Cal.2d 425, 58 Cal. Rptr. 13, 426 P.2d 173, and *Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 328 P.2d 198. We explained that this duty, the breach of which sounds in both contract and tort, is imposed because '[t]here is an implied covenant of good faith and fair dealing in every contract [including insurance policies] that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.'" *Gruenberg, supra,* 108 Cal.Rptr. at 484, 510 P.2d at 1036.

The Court continued:

"Thus in *Comunale* and *Crisci* we made it clear that '[l]iability is imposed [on the insurer] not for a bad faith breach of contract but for failure to meet the duty to accept reasonable settlements, a duty included within the implied covenant of good faith and fair dealing.' (*Crisci,* supra, 66 Cal.2d at p. 430, 58 Cal.Rptr. at p. 17, 426 P.2d at p. 177.) In those two cases, we considered the duty of the insurer to act in good faith and fairly in handling the claims of third persons against the insured, described as a 'duty to accept reasonable settlements'; in the case before us we consider the duty of an insurer to act in good faith and fairly in handling the claim of an insured, namely a duty not to withhold unreasonably payments due under a policy. These are merely two different aspects of the same duty. That responsibility is not the requirement mandated by the terms of the policy itself—to defend, settle, or pay. It is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities. Where in so doing, it fails to deal *fairly and in good faith* with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing." *Id.,* 108 Cal.Rptr. at 485, 510 P.2d at 1037.

This holding has been neither adopted nor rejected in Nevada. The concurring opinion of Justice Gunderson in *Fisher v. Executive Fund Life Ins. Co.,* 88 Nev. 704, 706–707, 504 P.2d 700, 702 (1972), does, however, recognize "an action for mental distress caused by bad faith refusal to pay policy proceeds." Justice Gunderson finds support for this position in two cases figuring prominently in *Gruenberg: Crisci v. Security Ins. Co. of New Haven, Conn.,* 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173 (1967), and *Fletcher v. Western National Life Insurance Co.,* 10 Cal.App.3d 376, 89 Cal.Rptr. 78 (1970).

The greater the delay in paying claims, the greater the pressure on impecunious insureds to settle valid claims, thereby depriving themselves of the full value of their insurance coverage.

 Plaintiff, under the *Gruenberg* principle, is entitled to compensatory dam-

ages if defendant breached the implied covenant of good faith and fair dealing. We cannot so find. Defendant sought the legal advice of an acknowledged expert in the field of fire insurance law who was supplied with all the material facts. He concluded and advised defendant that it was entitled to demand an assignment as a condition precedent to payment. Although we have decided that the advice was patently unsound, defendant was entitled to rely on it and cannot be charged with bad faith in doing so. Had defendant merely ignored the earlier advice to the contrary obtained from Mr. Roger Newton, the case would be a different one. An action in tort for bad faith breach of contract is one in which the bad faith is of the essence of the cause of action and reliance on the advice of counsel is a defense, the victim being remitted to his contract cause of action.

■ This, however, is not the end of the story. The damages recoverable on an insurance policy are not always limited to the face amount of the policy or the amount found due as indemnity for the specific loss insured against. Normal contract principles apply and the insurer is liable for all damages flowing as a natural and probable consequence from the breach. *Johnson v. Utile,* 86 Nev. 593, 472 P.2d 335 (1970). In the field of insurance law, insurance being an area affected with the public interest, the courts should be diligent liberally to apply contract damage principles to place the insured, so far as possible, in the position she would have been had the insurer promptly paid as required by its contract. This is the rationale of *Reichert v. General Insurance Company of America,* 59 Cal. Rptr. 724, 428 P.2d 860 (1967), in which Justice Peters, writing for the California Supreme Court, cogently observed:

"An insurance policy is, of course, a contract. (Ins.Code, § 22.) For breach of contract the usual measure of damages is all detriment flowing from the breach which the breaching party contemplated or should have contemplated at the time of contracting as likely to result from his failure to perform. (Civ.Code, § 3300;

*Weaver v. Bank of America,* 59 Cal.2d 428, 434, 30 Cal.Rptr. 4, 380 P.2d 644; *Ely v. Bottini,* 179 Cal.App.2d 287, 294, 3 Cal. Rptr. 756.)

"Where the owner of a heavily mortgaged motel or other business property suffers a substantial fire loss, the owner may be placed in financial distress, may be unable to meet his mortgage payments, and may be in jeopardy of losing his property and becoming a bankrupt. A major, if not the main, reason why a businessman purchases fire insurance is to guard against such eventualities if his property is damaged by fire. Certainly, the property owner who purchases fire insurance may reasonably expect that if a fire occurs, the insurance proceeds will be promptly available to protect him from those eventualities. The business of the fire insurer is to provide such protection. Insurers are, of course, chargeable with knowledge of the basic reasons why fire insurance is purchased, and of the likelihood that an improper delay in payment may result in the very injuries for which the insured sought protection by purchasing the policies.

"The question whether a particular kind of damage is within the reasonable contemplation of the parties is not one which ordinarily can be resolved on demurrer. (*Weaver v. Bank of America,* supra, 59 Cal.2d 428, 434, 30 Cal.Rptr. 4, 380 P.2d 644.) Certainly this court cannot say, as a matter of law, that at the time of contracting the defendants should not have contemplated that plaintiff would be in very serious financial trouble if a fire destroyed one-third of his motel and the insurers refused to perform their contractual obligations. (Cf. *Venturi v. Zurich General A. & L. Co.,* 14 Cal.App.2d 89, 57 P.2d 1002; *Henkel v. Pacific Employers Ins. Co.,* 140 Cal.App.2d 301, 305–307, 295 P.2d 80.)

" * * *

"In two situations it has been held in this state that damages for the breach of an obligation to pay money are not limited to the sum specified in the contract plus interest. Thus consequential dam-

ages have been permitted for failure to make a loan, and where the contract called for the payment to be made to a third party. (*Hunt v. United Bank & Trust Co.,* 210 Cal. 108, 291 P. 184; *Venturi v. Zurich General A. & L. Co.,* supra, 14 Cal.App.2d 89, 57 P.2d 1002.)

"It is true that the general rule at common law is that the damages for breach of a contractual obligation to pay money are the amount due plus interest thereon. (*Lally v. Wise,* 28 Cal. 539, 543–544; *Heyman v. Landers,* 12 Cal. 107, 111; *Guy v. Franklin,* 5 Cal. 416, 417.) The rule is based on three theories. First, money is always available in the market at the lawful rate of interest. (*Lowe v. Turpie,* 147 Ind. 652, 44 N.E. 25, 33, 47 N.E. 150, 37 L.R.A. 233.) Second, consequential damages are too remote to be proximately caused by the delay in payment. (*Friend & Terry L. Co. v. Miller,* 67 Cal. 464, 467, 8 P. 40.) Third, the rule provides 'a measure of damages of easy and certain application.' (5 Williston, Contracts (1937) § 1410, p. 3926.)

"Those reasons are not convincing. The facts of this case demonstrate that money is not always available in the market. (See also *Venturi v. Zurich General A. & L. Co.,* supra, 14 Cal.App.2d 89, 57 P.2d 1002; *Hunt v. United Bank & Trust Co.,* supra, 210 Cal. at p. 117, 291 P. 184; 5 Corbin, Contracts (1964) § 1078, p. 447.) Nor are consequential damages always so remote that the defendant should not be held responsible for them. (*Weaver v. Bank of America,* supra, 59 Cal.2d 428, 432–435, 30 Cal.Rptr. 4, 380 P.2d 644.) The claimed simplicity of determining damages by limiting the damages to the sum due plus interest should not justify the great hardship that such simplicity may cause. As Jessel, M. R., said in *Wallis v. Smith* (1882) 21 Ch.D. 243, 257, 'Now it may well be that the Courts thought that it was absurd to make a man pay a larger sum by reason of the nonpayment of a smaller. It has always appeared to me that the doctrine of the English law as to non-payment of money—the general rule being that you cannot recover damages because it is not paid by a certain day, it not quite consistent with reason. A man may be utterly ruined by the non-payment of a sum of money on a given day, the damages may be enormous, and the other party may be wealthy. However, that is our law. If however, it were not our law the absurdity would be apparent."

The result of the *Reichert* case was changed on rehearing, *Reichert v. General Insurance Company of America,* 69 Cal. Rptr. 321, 442 P.2d 377 (1968), and the Court held that the cause of action was in the trustee in bankruptcy and not the insured, but the rule of damages was not changed. The Court said:

"This brings us to the allegation of damages caused by the breach. It is manifest at the outset that while plaintiff alleges a fire loss of $424,000, he nowhere seeks recovery of said sum. What plaintiff does seek to recover in the last of five stated causes of action are in the nature of consequential damages flowing from the breach, which were actually contemplated or within the reasonable contemplation of the parties. (Civ.Code, § 3300; see *Hunt Bros. Co. v. San Lorenzo Water Co.* (1906) 150 Cal. 51, 56, 87 P. 1093, 7 L.R.A., N.S., 913; *Weaver v. Bank of America* (1963) 59 Cal.2d 428, 434, 30 Cal. Rptr. 4, 380 P.2d 644; *Ely v. Bottini* (1960) 179 Cal.App.2d 287, 294, 3 Cal.Rptr. 756.)"

See also: *Asher v. Reliance Insurance Company,* 308 F.Supp. 847 (N.D.Cal.1970); 10 William and Mary Law Review 466; *Alliance Ins. Co. v. Alper-Salvage Co.,* 19 F.2d 828 (6th Cir. 1927); Annotations: 37 A.L. R.2d 538; 47 A.L.R.3rd 314.

■ Indubitably, where the contract is purely one of indemnity, that is, one for the payment of a specific or readily ascertainable sum of money, the usual rule is that recovery is limited to that amount plus legal interest. *Scottish Union & Nat. Ins. Co. v. Bejcy,* 201 F.2d 163 (6th Cir. 1953); *Cox v. Smith,* 1 Nev. 161 (1863). But *Reichert, supra,* and the other authorities cited show

that where special circumstances are present, consequential damages may be recovered.

In *Truck Insurance Exchange v. Whitaker,* 71 Nev. 1, 278 P.2d 277 (1955), the Nevada Supreme Court said:

"Appellant assigns as error the jury's verdict in favor of respondents, of $712.63 cargo loss, and the court's refusal to grant a new trial as to this item of recovery. Appellant points out that respondents did not ask any such recovery since they had already received compensation for cargo loss; that, on the contrary, appellant had counterclaimed for a return of said amount. Undoubtedly confusion does exist upon this subject which requires clarification. The confusion, however, results largely from action of appellant. The record demonstrates that appellant by its own withholding of sums due to respondents has, in effect, recovered back the sum of $712.63 paid by it as compensation for cargo loss. Under the circumstances, the jury verdict must be held simply to be a determination that appellant should not recover on its counterclaim; *that respondents were entitled to compensation for cargo loss; that appellant was not entitled to withhold it from them; that appellant should restore respondents to the position they occupied before appellant's action of withholding.* Under this interpretation, which we hereby place upon the jury verdict, it cannot be regarded as improper." (Emphasis added.)

We think that the record supports a finding that defendant acted vexatiously and oppressively in this case in wilfully refusing to pay a just claim. It knew of plaintiff's straitened financial circumstances. It recognized its liability for a specific sum. Yet it ignored the advice of a reputable Nevada law firm, sought another contrary opinion, and imposed a condition on payment not justified by the contract or the law. Finally, when informed that the mortgaged property had been deeded to the mortgagee, the defendant again refused to pay the amount for which it was admittedly liable and said, in effect, "Aha, we've really got you now," and this in reliance on a situation caused by defendant's own earlier breach of contract. Advice of counsel is no defense to an action for breach of contract. The contract fixes the rights and obligations of the parties and a contracting party who refuses to perform, albeit in reliance on an attorney's advice, acts at his peril.

Had defendant performed its obligation seasonably, plaintiff would have received $150 monthly payments from the Bates for her support. From June 1, 1972 to date, this would have amounted to $3,600. In addition, as a consequence of the physical deprivations suffered by plaintiff as a direct result of defendant's breach, she has been damaged in the sum of $5,000.

Punitive damages are not recoverable. N.R.S. § 42.010. The contract does not provide for attorney's fees. There is no Nevada statute which allows attorney's fees in this type of case. Accordingly, they are not recoverable. *City of Las Vegas v. Cragin Industries,* 86 Nev. 933, 478 P.2d 585 (1970).

Judgment should be entered for plaintiff for Fifteen Thousand Dollars ($15,000), with interest thereon from July 27, 1972 at the rate of seven per cent (7%) per annum until paid, and for compensatory damages in the sum of Eight Thousand Six Hundred Dollars ($8,600), with interest thereon at seven per cent (7%) per annum from date of judgment until paid.

LET JUDGMENT BE ENTERED ACCORDINGLY.