**Larry Jerome CORBIN, Standard Federal Savings & Loan Association of Atlanta and T. R. Heard, Inc.**

v.

**AETNA LIFE & CASUALTY COMPANY and the Hanover Insurance Company.**

**Civ. A. No. 76–1350A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Feb. 22, 1978.

Gibson Dean, II, Buford, Ga., Huie, Ware, Stern, Brown & Ide, Atlanta, Ga., Morgan & Sunderland, Buford, Ga., for plaintiffs.

Swift, Currie, McGhee & Hiers, Atlanta, Ga., Whelchel, Dunlap & Gignilliant, Gainesville, Ga., for defendants.

## ORDER

RICHARD C. FREEMAN, District Judge.

This is a diversity action, 28 U.S.C. § 1332, seeking insurance proceeds and breach of contract damages, brought by Mr. Corbin, a citizen of Georgia, against The Hanover Insurance Company [hereinafter "Hanover"], a New Hampshire corporation with its principal place of business in Massachusetts and against Aetna Life and Casualty Company [hereinafter "Aetna"], a Connecticut corporation with its principal place of business in Connecticut. Standard Federal Savings and Loan Association of Atlanta [hereinafter "Standard Federal"] and T. R. Heard, Inc. have intervened as party plaintiffs claiming to hold respectively the first and second mortgages on Mr. Corbin's Buford, Georgia property. The action, which was originally filed in the State Superior Court for Gwinnett County, Georgia, was removed to this court by defendant Hanover, 28 U.S.C. § 1446. Presently before the court are: (1) motions for voluntary dismissal, Rule 41(a)(2), Fed.R.Civ.P., of plaintiff Corbin and intervenor T. R. Heard, Inc.; [1] (2) motion for partial summa-

---

1. Plaintiff Corbin and intervenor T. R. Heard, Inc. have moved for voluntary dismissal by stipulation under Rule 41(a)(1), Fed.R.Civ.P., but have failed to satisfy either of the subpart, (i) or (ii), requirements of Rule 41(a)(1). These motions will therefore be construed as motions for voluntary dismissal by order of court, Rule 41(a)(2), Fed.R.Civ.P.

ry judgment as to liability against Aetna brought by intervenor Standard Federal; (3) motion for summary judgment of defendant Aetna; and (4) motion for summary judgment of defendant Hanover. The motions for voluntary dismissal are unopposed, see Local Rule 91.2, and are hereby GRANTED. The claims of Larry Jerome Corbin and T. R. Heard, Inc. are DISMISSED WITH PREJUDICE. Before proceeding to the merits of the remaining motions, a brief outline of the salient facts in this action is warranted.

Corbin's action as filed in July, 1976, sought to recover fire insurance proceeds as contracted for compensation for losses sustained in a fire which occurred on December 1, 1975. Corbin notified the defendant insurers of the loss on December 8, 1975. The fire damaged Corbin's home located at 34 Hamill Drive, Buford, Georgia. Standard Federal and T. R. Heard, Inc. intervened in the Corbin action to assert their respective rights as first and second mortgagees of the Buford property. Both Corbin's and T. R. Heard's motions for voluntary dismissal have been granted, leaving only Standard Federal's claims under the insurance policies.

The named insurance policies are: Hanover Homeowner's Policy, HO 75 56 52 [hereinafter "Hanover Policy"]; and Aetna Fire Policy, 11 FP 617329 PCA [hereinafter "Aetna Policy"]. The Hanover policy was negotiated by Corbin as a condition of his mortgage obligation to Standard Federal. The Hanover policy set out a three-year term to run from November 1, 1972 to November 1, 1975. Whether or not the Hanover policy had been renewed and was thus in effect on the date of the fire loss is in dispute. Standard Federal was identified on this policy as the "mortgage or loss payee" to the extent of its interest in the premises. The Aetna policy was issued on November 18, 1975, directly to Standard Federal, with Standard Federal listed as the loss payee in a similar standard clause.

On December 1, 1975, the date of the fire, Corbin's indebtedness to Standard Federal totalled $34,181.54. Subsequent to the loss, Standard Federal and Aetna discussed the fire claim but were unable to reach a settlement compromise. On July 6, 1976, Standard Federal foreclosed on the Corbin property, having received no mortgage installments from Corbin since the date of the fire. Standard Federal, the sole bidder at the announced sale, bid in the property at $36,738.47, an amount representing the outstanding balance, the interest then owing, attorney's fees, and the costs of foreclosure. On July 12, 1976, Standard Federal advised the defendant insurers that it had acquired the Corbin property in fee and that it now desired rapid settlement of its fire loss. Aetna and Hanover refused and continue to refuse payment of any amount on the fire loss.

The parties contest the substantiality of the damage sustained and the apportionment of damage, if any between the two defendant insurance companies. Standard Federal and Hanover also dispute the vitality of the Hanover policy at the time of the loss. However, Standard Federal, Aetna, and Hanover each urge the court, by way of motions for summary judgment, to decide the issue of the insurers' liability to Standard Federal, the mortgagee, now that foreclosure has occurred.

Aetna and Hanover argue that Standard Federal's bidding in of the Corbin property at the foreclosure sale at the full amount of the debt, extinguished the debt and extinguished the insured's right to insurance proceeds on the unpaid debt. Aetna buttresses its arguments with contentions: (1) that the great weight of authority supports this view; (2) that the language of the insurance contract should be read to provide this solution; (3) that the insured has impaired the insurer's right of subrogation; and (4) that the allowance of recovery of insurance proceeds after foreclosure would constitute allowance of a double recovery and would foster fraud and collusion between mortgagors and mortgagees. Hanover adds to the substance of Aetna's contentions: (1) that Standard Federal failed to satisfy the state law requirements for pursuing a deficiency after a foreclosure, Ga. Code § 67–1503, and

thus no legal deficiency need be acknowledged by the insurers; and (2) that the Hanover policy had expired by its own terms at the time of the loss.

Standard Federal in its motion for partial summary judgment as to the liability of Aetna and in its opposition to the summary judgment motions of both Aetna and Hanover, argues: (1) that the rights, interests, and obligations of the insured and the insurers are to be determined at the time of the loss and should be unaffected by a later arrangement between the insured and the mortgagor; (2) that several jurisdictions have declared this as a rule of law; (3) that the language of the contract provides for this result; and (4) that no double recovery is threatened as the fire loss has never been compensated. Standard Federal denies Hanover's assertion that the Hanover policy had lapsed without a timely renewal.

The Georgia courts have not specifically considered the issue presented herein, that is, whether foreclosure by the mortgagee subsequent to a loss extinguishes the mortgagee's rights to insurance proceeds as the loss payee on the policy in the amount of the foreclosure. Several foreign jurisdictions, however, have considered the issue and can offer some guidance to the court in choosing a fair and logical result. Other courts have also considered various permutations of the instant formula. The rationale and holdings in these latter cases are sometimes helpful, but other times readily distinguishable.

The pertinent provisions and terms of the contract must first be presented. Standard Federal is the loss payable insured named in both the Hanover policy procured by Corbin, the mortgagor, and in the Aetna policy procured directly by Standard Federal, the mortgagee. The contract contains the "standard" or "New York" clause, *see* 5a J. Appleman, *Insurance Law and Practice,* § 3401 at 279 (1970), which appears as:

Loss, if any, under this policy, shall be payable to the aforesaid [Standard Federal] as mortgagee . . . as interest may appear under all present or future mortgages upon the property herein de-

scribed in which the aforesaid may have an interest as mortgagee . . . in order of precedence of said mortgages, and this insurance, as to *the interest of the mortgagee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property nor by any foreclosure or other proceedings or notice of sale relating to the property nor by any change in the title or ownership of the property.* . . .

Aetna Policy, at 4 DF–2; Hanover Policy, at 3 HO–2 ¶ 4 [emphasis added].

Aetna contends that the above clause merely says that foreclosure will not relieve liability *per se,* but leaves unsaid the understanding that foreclosure will affect the extent of recovery. Aetna's argument is based on the rationale of *Aetna Insurance Co. v. Baldwin County Building and Loan Ass'n,* 231 Ala. 102, 163 So. 604, 605 (1935):

The stipulation is that the insurance shall not be invalidated by such foreclosure; not that thereby the mortgagee may not lose his right to collect the loss by a foreclosure thereafter occurring, and occasioned by his status thus created, upon a consideration of established principles. His interest in the claim for the loss must exist not only at the time of the loss, and that is not diminished by a foreclosure which may have occurred theretofore, but it must also exist at the time of the suit and judgment. A liability may be fixed by the occurrence of the conditions provided for its existence, but after it is thus fixed, it may cease or terminate as to the parties in whose favor it exists, by events thereafter occurring which have that legal effect.

Because Standard Federal's status was no longer one of a mortgagee at the time of the suit, Aetna and Hanover contend that Standard Federal is not privileged to recover the proceeds of insurance on the mortgage debt. When the mortgage was foreclosed, the debt was extinguished and, it is argued, so too was the insurable interest. The defendant insurers cite several cases in support of their contentions, including *Ro-*

senbaum v. Funcannon, 308 F.2d 680 (9th Cir. 1962). *Rosenbaum* is a leading case but must be distinguished from the instant action as it involved a foreclosure prior to the complained of loss and concerned the disputed allocation of proceeds between mortgagor and mortgagee. The insurance company had admitted liability by depositing the proceeds with the court to be awarded to the prevailing party in the mortgagor-mortgagee dispute. Here, the scenario presents a dispute between the loss payable mortgagee and the insurer who denies liability after a foreclosure.

When other courts have applied the force of the *Rosenbaum* holding to situations similar to the instant dispute, strenuous criticism of its applicability and authoritativeness has been voiced. *See* Dissent of J. Scileppi in *Whitestone Savings & Loan Ass'n v. Allstate Insurance Co.,* 28 N.Y.2d 332, 320 N.Y.S.2d 737, 270 N.E.2d 694, 698 (1971); and the District Court holding in *Mann v. Glen Falls Insurance Co.,* 418 F.Supp. 237 (D.Nev.1974), *rev'd,* 541 F.2d 819 (9th Cir. 1976). Other courts have simply refused to follow the rule which *Rosenbaum* states, particularly in actions to determine the liability of the insurer to the insured mortgagee. *E. g., Federal National Mortgage Ass'n v. Ohio Casualty Insurance Co.,* 46 Mich.App. 587, 208 N.W.2d 573 (1973) [foreclosure prior to loss in which the court held that "mortgagee" simply identified a protected party]; *National Fire Insurance Co. v. Kinerty Investment Co.,* 170 Okl. 44, 38 P.2d 496 (1934); *Gattavara General Insurance Co. of America,* 166 Wash. 691, 8 P.2d 421 (1932). Upon our review, it appears that no great weight of authority favors either of the opposing views presented by intervenor and defendants.

The commentators on the issue offer no easy resolution of the dispute. "The rights of the mortgagee, if any, to the proceeds of the insurance are determined and fixed as of the time of the loss." 5 *Couch on Insurance 2d,* § 29:75 at 360 (1960). *See* 3 *Couch on Insurance 2d,* § 24.72 at 161 (1960). Another commentator opines:

[t]he rights of the mortgagee are considered to be determined as of the time of the loss, so that extinguishment of the mortgage or trust deed by a foreclosure after the loss will not necessarily affect the insurer's liability to the mortgagee.

5a J. Appleman, *Insurance Law and Practice,* § 3403 at 300 (rev'd ed. 1970). Later in the same treatise, Appleman qualifies his first statement with the following explanation:

■f course, however, the full or partial extinguishment of the mortgage debt itself, whether prior to or subsequent to the loss, will preclude, to the extent thereof, any recovery on the policy by the mortgagee. And it has been held that the mortgagee acquiring the property at foreclosure sale has no valid cause of action upon the policy, as by his action he became the owner, rather than a creditor.

*Id.* at 302.

The few Georgia law cases cited bear only remote applicability to the issue presented herein. *Calvert Fire Insurance Co. Environs Development Corp.,* C.A. No. 75–1009 (N.D.Ga. Dec. 30, 1976) (O'Kelley, J.), involved a mortgagor-mortgagee contest and did not question the liability of the insurer. *Huckaby v. Georgia Farm Bureau Mutual Insurance Co.,* 140 Ga.App. 493, 231 S.E.2d 378 (1976), found that no loss had been suffered as the tenant continued to pay his obligation, which is not the case *sub judice.* Aetna and Hanover can show no persuasive authority in these few local law discussions.

■ With a split of jurisdictions and commentators on the issue and no immediate guidance from the Georgia courts, this court must resort to a factual, equitable, and logical review of the dispute. Standard Federal, the mortgagee, was clearly named "loss payee" on the subject insurance policies. The risk insured, that is the coverage bought by the premiums, was against fire to the extent of the interest of the mortgagee. A fire occurred on December 1, 1975, when the mortgagee's interest was calculated at $34,181.54. Neither Aetna nor Hanover charges failure of proper notice or untimely presentation of claim and thus the

procedural niceties conditioning recovery are presumed satisfied. Yet, the insurers did not and have not paid the mortgagee's claim. At the same time, the mortgagor did not pay his mortgage installments. For seven months the insurers dawdled and the mortgagor defaulted. The insured foreclosed pursuant to the power of sale in the security deed. Certainly, the insured mortgagee's action was predictable; surely, it was reasonable after seven months of empty waiting. The insurers ask to be rewarded for their delay, for breaching the insurance contracts which Standard Federal and the mortgagor appear to have performed in full. The court will order no such windfall. What coverage was purchased by Standard Federal or in its name, if, when the event occurs, just compensation is not tendered? Aetna, and Hanover, if the Hanover contract was in force, are liable to Standard Federal in the amount of fire loss sustained by the Corbin property on December 1, 1975. The amount of proceeds due reflects the damage incurred by the fire up to the extent of Standard Federal's interest on the date of the fire.[2] Payment of contracted for proceeds upon the happening of the agreed upon event will not grant Standard Federal a double recovery, as Standard Federal has never received any compensation for the fire loss. *Contra, Nationwide Fire Insurance Co. v. Wilborn,* 291 Ala. 193, 279 So.2d 460, 463 (1973). Standard Federal's motion for partial summary judgment as to Aetna's liability is therefore GRANTED and Aetna's and Hanover's motions for summary judgment are DENIED.

█ The defendants' argument that the insured could have preserved its rights by filing suit prior to foreclosure, is not well-taken. This court will not reward unreasonable delay by insurers, neither will we, as a general rule, condition an insured's recovery on the filing of a lawsuit. Resort to the courts should be the exception and not the rule of contract performance. Standard Federal appeared eminently reasonable in seeking settlement and in foreclosing when it did. Insureds should not be required to preserve their contractual rights by initiating lengthy, expensive litigation prior to foreclosure. Such wasteful litigation can be obviated, in part, by establishing as a rule of law the date of the loss as the date when adverse rights are to be determined. The extent of the mortgagee's interest at the time of the loss sets the bounds of its possible recovery with an allowance for damages caused by delay or any bad faith which can be demonstrated. Neither later extinguishment nor augmentation of the debt should alter an insurer's liability and thus the state deficiency judgment procedures, Ga. Code § 67–1503, are inapplicable. Upward or downward changes in the debt will only affect the economic relationship and relative status of the mortgagor and mortgagee in their separate dealings and transactions. This mortgagor-mortgagee relationship is the one considered in *Rosenbaum v. Funcannon, supra;* and *Calvert Fire Insurance Co. v. Environs Development Corp., supra.* The court limits our consideration to the instant circumstances and expresses no opinion as to any action evidencing a change in debt circumstances prior to the loss.

█ Defendants' subrogation rights in an action against the mortgagor or some other third party were not impaired upon the mortgagee's foreclosure. The terms of the standard clause deny such a result:

> Whenever [the insurer] shall pay the mortgagee . . . any sum for loss under this policy . . . this "insurer" shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party in whom such payment shall be made, under all securities held as collateral to the mortgage debt,. or may, at its option, pay to the mortagagee . . . the whole principal due or to grow due on the mortgage with interest and shall thereupon and of all such

---

2. The foreclosure amount may be offered as a proof of no fire damage. Standard Federal's justification for bidding in the property at the amount of the debt in consideration of an ex- pectancy of the loss compensation, will similarly be relevant. Evidence of greater weight and persuasion will be found in appraisals which best estimate the loss at the hour in question.

other securities; but no subrogation shall impair the right of the mortgagee . . to recover the full amount of said mortgagee's . . . claim.

Aetna Policy at 4–DF–2; Hanover Policy at 3 HO—2, ¶ 4. The defendants had no enforceable subrogation rights because they had refused to pay the claims of the mortgagee. Subrogation rights vest only upon payment of the claim to the insured. The amount of settlement with the mortgagee would have determined the extent of loss to be pursued against a wrongdoer who may have ultimately caused the loss. If defendants had been concerned about their subrogation rights, they should not have been loath to compensate the insured upon its rightful claim. By the terms of the contracts, Standard Federal did not impair the insurers' subrogation rights when it foreclosed on the Corbin property after a seven month default.

The court's order today is only dispositive of Aetna's liability to Standard Federal. Hanover's liability remains uncertain because it is contingent upon the factual vitality of the Hanover policy at the time of the fire loss. Similarly, any factual determination of damages and any apportionment of damages between the two insurers remains unconsidered herein.

Accordingly, the court orders: (1) that Larry Jerome Corbin's motion for voluntary dismissal be GRANTED and that the claims of Mr. Corbin be DISMISSED WITH PREJUDICE; (2) that T. R. Heard, Inc.'s motion for voluntary dismissal be GRANTED and that the claims of T. R. Heard, Inc. be DISMISSED WITH PREJUDICE; (3) that Standard Federal's motion for partial summary judgment as to Aetna's liability be GRANTED; (4) that Aetna's motion for summary judgment be DENIED; and (5) that Hanover's motion for summary judgment be DENIED as material factual issues remain in dispute.

IT IS SO ORDERED.