AMERICAN EQUITABLE ASSURANCE CO., ET AL., PLAIN-
TIFFS, *v.* ALBERT NEWMAN, ET AL., CROSS-DEFENDANTS AND
RESPONDENTS, AND FIDELITY-PHENIX INSURANCE CO., CROSS-
DEFENDANT AND APPELLANT.

9351.
Submitted May 2, 1957. Decided July 24, 1957.
Rehearing Denied August 8, 1957.
313 Pac. (2d) 1023.

Messrs. Wiggenhorn, Hutton, Sciltz & Sheehy, Billings, for appellant.

Messrs. Kelly & Battin, Billings, Mr. J. H. McAlear, Red Lodge, for respondents.

Mr. John C. Sheehy, Mr. William T. Kelly and Mr. McAlear argued orally.

MR. JUSTICE ANGSTMAN:

Defendant Fidelity-Phenix Insurance Company, hereinafter called Fidelity Company, has appealed from a judgment and from two special orders entered after judgment. One order overruled a motion to vacate the judgment, and the other denied a motion excepting to certain findings. No useful purpose would be served in considering the propriety of the orders appealed from in the view which we take on the appeal from the judgment.

The controversy arises out of the following facts:

On April 3, 1949, defendants, Jay D. Van Houten and Helen L. Van Houten, husband and wife, entered into a written contract for deed with defendant, Albert Newman, whereby the Van Houtens agreed to convey to Albert Newman certain real and personal property in Hysham, being the Eureka Hotel Building and its fixtures and contents. The consideration to be paid by Newman was $18,000 of which $5,000 was paid when the contract was made. Newman made subsequent payments. The property was entirely consumed by fire on April 12, 1950. At that time the balance due to the Van Houtens was $11,500 principal, and $318.52 interest.

The contract of sale included this paragraph:

"The said party of the second part (Albert Newman) further agrees to at all times keep the building and fixtures and contents of the building on the above described premises insured against loss and damage by fire in the amount of not less than Thirteen Thousand and no/100 ($13,000.00) Dollars, with loss

payable to the parties hereto as their interest shall respectively appear at the time any such loss or damage may be sustained."

At the time of the fire Newman carried the four following policies of insurance:

| Plaintiff Company | Date Issued | Real Property | Personal Property |
|---|---|---|---|
| American Equitable ............... | 10/31/49 | $ 6,000.00 | $ 600.00 |
| Westchester Fire ............... | 10/31/49 | $ 6,000.00 | $ 600.00 |
| Standard Fire of Hartford ......... | 3/31/50 | $ 5,000.00 | $1,000.00 |
| Planet Insurance Co. ............ | 3/31/50 | $ 5,000.00 | $1,000.00 |
| Total Insurance ............... | | $22,000.00 | $3,200.00 |

Each policy contains this statement, "Loss, if any, under item(s) .............. subject to all the terms and conditions of this policy, and to the written agreement, if any, between this Insurer and the following named Payee, is payable to...................."

In the first blank space there was typewritten in each policy the following, "1 and 2." Item 1 relates to the coverage on the building and item 2 to its contents, and there is no controversy here regarding those items.

In the second blank space was typewritten the clause "See contract of sale clause attached."

Attached to each policy is a contract of sale clause containing among other statements the following:

"It is understood that Albert Newman (hereinafter termed Vendee) has an interest in the property described under item(s) .............. of this policy, by virtue of contract of sale from Jay D. Van Houten and Helen L. Van Houten, (hereinafter termed Vendor) whose mailing address is..................

"If loss under this policy be payable to a mortgagee, trustee or beneficiary under deed of trust, the proceeds of this policy shall be first applied to the payment of such payee's interest, and the balance, if any, subject to all the terms and conditions of this policy, shall be payable to said vendor and/or said vendee in the manner hereinafter provided in paragraphs designated 'First' and 'Second' hereof. If this policy be not

payable to a mortgagee, trustee or beneficiary under deed of trust, the proceeds of this policy, subject to all its terms and conditions, shall be payable to said vendor and/or said vendee as follows:

"First: To said Vendor, to an amount not exceeding the balance unpaid, at the time of loss, upon the contract of sale above referred to; and

"Second: The balance, if any, to said Vendee."

It is conceded that the loss under the policies here was not payable to a mortgagee, trustee or beneficiary under deed of trust. Hence the latter part of the contract for sale clause applies here.

On January 14, 1950, defendant, Fidelity Company, executed a policy of insurance to defendant Van Houten covering his interest in the Eureka Hotel property for $8,000 on the real estate and $4,000 on the personal property. The Van Houtens obtained this policy of insurance on information that Newman had not paid the premiums on the policies obtained by him and hence because they were apprehensive regarding the coverage which Newman contracted to give them.

More than fourteen months after the fire, and on July 27, 1951, the plaintiff companies filed their complaint in interpleader, deposited $22,500 in court, obtained an order of court requiring defendants to interplead, and restrained each from commencing or prosecuting any action against plaintiffs or either thereof under the policies. The sum of $22,500 was arrived at by compromise agreement between plaintiff insurance companies and all of the defendants except the Van Houtens and the Fidelity Company who did not participate in the compromise agreement.

According to the stipulation the fund was to be distributed as follows:

| | |
|---|---:|
| Rose Kelly Mower | $ 4,792.50 |
| D. C. Tucker and Carbon Implement Company | 1,407.76 |
| Union Distributing Company | 277.78 |
| J. C. Taylor | 4,556.19 |

R. E. Kelly as assignee of Louis Cohn & Co.     306.90
Home Realty Company     1,000.00
Albert Newman     10,158.87

    Total     $22,500.00

On March 12, 1951, the Van Houtens gave notice of cancellation of the contract of sale to Albert Newman setting forth certain defaults and requiring them to be cured within thirty days or the contract would be cancelled. The defaults were never cured and the contract was forfeited.

On August 13, 1951, defendant, Fidelity Company, paid to the Van Houtens the sum of $12,000 pursuant to its policy of insurance. Simultaneously the Van Houtens executed to the Fidelity Company, assignments of all their rights under the policies of insurance executed by plaintiff corporations.

The question involved in this proceeding is whether the Fidelity Company may share in the sum of $22,500 deposited in court by plaintiff corporation. Further facts will be alluded to when we discuss the legal questions presented.

Under appropriate pleadings defendant, Fidelity Company, claimed the right to share in the fund deposited in court on two theories. It alleged in its answer and cross-complaint in substance that Newman, pursuant to the contract with the Van Houtens, procured policies of insurance which protected the Van Houtens and that the assignment by the Van Houtens gives it the right which Van Houtens had to share in the funds.

It also alleged that Newman failed and neglected to obtain insurance protecting the Van Houtens contrary to the contract with the Van Houtens, but did obtain policies on his own right in the property and that under such circumstances equity would impress a lien upon the proceeds of such insurance for the Van Houtens which passed to the Fidelity Company by the assignment.

After hearing, the court denied the claim of the Fidelity Company and these appeals followed.

Specifically the court found that Newman is entitled to the

$22,500 subject to the rights of Rose Kelly Mower, Adminis-
tratrix of the Estate of Mary E. Kelly, Deceased; D. C. Tucker;
J. C. Taylor, Union Distributing Company; and Carbon Im-
plement Company, who have appeared and set forth their claims
in the action in interpleader; and that defendants the Van
Houtens and Fidelity Company have no interest therein. It
should be said that no question is raised here as to the validity
of the claims of Rose Kelly Mower, D. C. Tucker, J. C. Taylor,
Union Distributing Company or the Carbon Implement Co.

As findings of fact the court found at the time of the entry
of judgment there was attached to each of the Newman policies
of insurance a contract for sale clause purporting to insure the
Van Houtens for the unpaid balance on the contract of sale,
but that the policies obtained by Newman through Louis Sasich
of Billings, the agent of plaintiff insurance companies, were
obtained with the express direction to Sasich that Newman de-
sired the policies for his own protection and for the protection
of no one else and that Newman did not know of the contract
for sale clauses which were attached to the policies and that he
neither accepted nor ratified the contract of sale clauses.

It is true that Newman testified that he told Mr. Sasich when
he ordered the insurance that he "wanted the insurance for
myself." He further testified: "Q. At the time you ordered
the insurance from Mr. Sasich, did he make any mention to you
about putting Contract For Sale Clauses on the policies in favor
of Van Houtens? A. No. Q. Did you authorize him to attach
any such clause to the insurance contracts? A. No." He said
he did not actually see the policies of insurance until after the
fire. That they never had been delivered to him. They had
been retained by Mr. Sasich. There was evidence that Mr. New-
man had told Mr. Van Houten that he, Mr. Van Houten, was
covered by insurance.

The record likewise reveals without dispute that Mr. Sasich
procured the policies of insurance issued by plaintiff corpora-
tions from Taylor-Tipling of Helena.

He submitted to Taylor-Tipling a written application for policies signed by himself.

It recited that the name of the insured is Albert Newman and further stated: "Loss, if any, payable to one Jay D. Van Houten, address Hysham, Montana." It stated "enclosed find Contract on same, so please return contract." The enclosed contract was shown to be a copy of the land contract between Newman and the Van Houtens.

The application was supplemented by a letter written by Sasich a few days later in which he stated: "* * * put in rider for the Van Houtens for $13,000 that is what Newman owes to Van Houten."

On the strength of this application Taylor-Tipling issued the two policies dated October 31, 1949. The two policies issued March 31, 1950, were for additional insurance and these were issued on application of Mr. Sasich which recited—"Loss, if any, payable to Albert Newman, Hysham, Montana."

The application was accompanied by a letter signed by Mr. Sasich in which he stated in part, "* * * you know the building is insured for $13,000 by your company." Taylor-Tipling on the strength of this letter and application, and in view of the policies already issued in October, 1949, were fully justified in attaching the contract for sale clause to these policies which it did. The record shows that when the policies here involved were prepared there was made an original and three carbon copies. Each copy was sent to a different place, and the testimony shows that they all had this clause attached at the time they were executed. After the fire one of Newman's counsel obtained a copy of the insurance policies issued by plaintiff corporations for exploration of their contents, and he testified that at that time they contained no contract of sale clauses, and he was corroborated in that respect.

In the view that we take of the case it is of no consequence whether the contract of sale clauses were attached to the policies or not.

The rule is: "* * * * that if a mortgage contains a covenant

that the property shall be kept insured by the mortgagor for the security of the mortgage, and pursuant to his covenant, the mortgagor takes out a policy of insurance covering the mortgaged premises the mortgagee will be entitled to the proceeds on an equitable lien even though the policy contains no mortgagee clause.'' First Nat. Bk. of Jessup v. Cappellini, 149 Pa. Super. 14, 26 A. (2d) 119, 120. And, see, for other cases supporting this view the cases cited in Pearson Mfg. Co. v. Pittsburgh Steamboat Co., 309 Pa. 340, 163 A. 680, 94 A.L.R. 1382, 1385; and Couch on Insurance, vol. 8, section 1936c, page 6450, et seq.

If the buyer, who is under obligation by his contract, as here, to keep the property insured for the benefit of the seller, neglects to do so then the courts will enforce an equitable lien upon any insurance carried by the buyer to protect the seller or his assignee. Alexander v. Security-First Nat. Bank, 7 Cal. (2d) 718, 62 Pac. (2d) 735; Gilbert v. Mooring, Tex. Civ. App., 88 S.W. (2d) 537; First Nat. Bk. of Pocatello v. Merchants' F. Ins. Co., 40 Idaho 251, 232 Pac. 903; Nelson v. Nelson Neal Lumber Co., 171 Wash. 55, 17 Pac. (2d) 626, and cases listed in 92 A.L.R. 554, et seq.

And of course when the buyer obtains insurance for the benefit of the seller there can be no doubt of the seller's right to the proceeds and likewise those rights pass to the assignee. Compare McCoy v. Continental Ins. Co., 326 Mich. 261, 40 N.W. (2d) 146. These conclusions are not altered by the fact that the contract of sale was cancelled by the seller after the fire. Brown v. Northwestern Mutual Fire Ass'n, 176 Wash. 693, 30 Pac. (2d) 640; Fageol T. & C. Co. v. Pacific Indemnity Co., 18 Cal. (2d) 731, 117 Pac. (2d) 661.

Our statute answers this contention. It provides: ''A change of interest in a thing insured, after the occurrence of any injury which results in a loss, does not affect the right of the insured to indemnity for the loss.'' R.C.M. 1947, section 40-214.

Counsel for Newman rely strongly upon the statement of counsel for appellant made at the trial that the theory

upon which it sought relief was based on assignment and subrogation. They contend that these two theories differ from an equitable lien theory, and that appellant may not now rely on the latter.

Counsel for Newman overlook the fact that the equitable lien theory is part and parcel of the doctrine of subrogation. In other words, the doctrine of subrogation is the substitution of one person in place of another and rests upon "principles of natural justice" and is "an equitable result purely, and depends on facts to develop its necessity that justice may be done." Couch on Insurance, vol. 8, sec. 1996, page 6588.

The equitable lien theory is one of the reasons for applying the subrogation doctrine. As said in Restatement of the Law, Restitution, section 162e, page 657, "By means of subrogation he thus obtains an equitable lien."

Counsel for Newman contend that the case is not one for subrogation because the court found that Van Houten asserted no right or claim to proceeds from the plaintiff insurance policies, but looked solely to the Fidelity Company policy for indemnity. This circumstance does not alter the right of the Fidelity Company to claim the right of subrogation. The policy of insurance issued by the Fidelity Company to Van Houten contained this clause, "This Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company."

The Fidelity Company has the right to be subrogated to whatever right Van Houten had whether asserted by the latter or not.

Furthermore the record shows that the reason why Van Houten did not file a claim for loss or give notice of loss to the plaintiff insurance companies was because their claim agent assured counsel for Van Houten that no further notice or claim was necessary since Newman had already made a claim and given notice.

Newman gave a separate written proof of loss under each

policy within about a month after the fire. They were each signed by him and each contained this statement: "Title and interest: When this policy was acquired and at the time of the loss the interest of your insured in the property described therein was sole and unconditional ownership, and no other person or persons had any interest therein or incumbrance thereon. (State exceptions, if any). Legal title in Jay D. Van Houten and Helen L. Van Houten, his wife, and sold to insured on a contract for deed. Balance due vendors $11,950.00, as of May 1, 1950.''

In the light of this proof of loss which expressly covered the Van Houten loss it is readily understandable why the claim agent assured Van Houten's counsel that no further proof of loss was required of Van Houten.

Counsel for Newman also contend that since the Van Houtens ▇ recovered their entire claim for insurance from the Fidelity Company they had nothing left to assign and hence that it obtained nothing by virtue of the assignment.

The contract between Van Houten and the Fidelity Company expressly authorized and required an assignment to the extent that the Fidelity Company made payments. Furthermore, without the assignment such Company was entitled to be subrogated to the rights of Van Houten.

The judgment is reversed and the cause remanded with directions to sustain the claim of the Fidelity Company to be subrogated to the rights of the Van Houtens in the proceeds from the policies of insurance issued by plaintiffs.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES CASTLES, BOTTOMLY and ADAIR, concur.