No. 79-89

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

———————————

C. B. CHENNAULT and MRS. CHENNAULT,

Plaintiffs and Appellants,

vs.

GEORGE SAGER, JOHN BUTTLEMEN, and
JOY NASH, COUNTY COMMISSIONERS,
GALLATIN COUNTY,

Defendants and Respondents.

———————————

Appeal from: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin.
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellants:

Bennett and Bennett, Bozeman, Montana
Lyman H. Bennett III argued, Bozeman, Montana

For Respondents:

Donald White, County Attorney, Bozeman, Montana
Leanne Schraudner argued, Deputy County Attorney,
Bozeman, Montana

———————————

Submitted: April 17, 1980

Decided: MAY 6 - 1980

Filed: MAY 6 - 1980

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment and order of the District Court of the Eighteenth Judicial District relieving respondents from the effects of a temporary restraining order. The restraining order was issued as partial relief prayed for in a complaint filed by appellants which sought to permanently enjoin respondents from authorizing or making any improvements upon certain property which had been originally designated and dedicated, under a subdivision plat, as a county road.

Appellants, Mr. and Mrs. C. B. Chennault, are the owners of Lots 9 and 10 of the Lionhead Homesites Subdivision in Gallatin County, Montana. These lots are situated adjacent to Central Avenue. Central Avenue is a street within the subdivision which was designated as a public street at the time of the recording of the subdivision plat.

During 1973 appellants contacted the Gallatin County commissioners regarding the possible abandonment of a portion of Central Avenue. A petition was thereafter drafted by the county on appellants' behalf. The petition requested the abandonment of the northerly 100 feet of Central Avenue. Appellants circulated the petition among the freeholders of their subdivision and obtained the signatures of four people endorsing the petition: C. B. Chennault, Orion L. Hendry, Geraldine Hendry, and Viril Gillespie. After the filing of the petition, the county commissioners appointed a board of viewers to inspect the portion of the street specified in the petition. The inspection was conducted on August 16, 1973. On August 23, 1973, the board of viewers filed a report recommending abandonment of the portion of the road.

On August 21, 1973, the Gallatin County road supervisor's officer sent notices to those people who had signed the petition informing them that a hearing would be held with respect to the petition on September 6, 1973. Notices were sent by certified mail to Orion L. Hendry, C. B. Chennault and Mrs. Viril Gillespie. However, notice was not given to any other adjoining landowners of record. The hearing regarding the petition was held on September 6, 1973. At the hearing, the commissioners accepted the recommendation of the board of viewers and resolved to abandon the requested portion of the street.

Subsequently, in 1976, the county attorney became aware that there were several inadequacies employed in the process to abandon the street. In a letter dated July 12, 1976, the county attorney notified the commissioners of the inadequacies and recommended that the order of abandonment be set aside as invalid and void. The letter stated that, under Montana law, too few people had signed the petition for abandonment and that notice was not properly served. Following the county attorney's recommendation, the commissioners invalidated the order for abandonment on July 14, 1976.

Upon being notified that the abandonment had been invalidated, appellants contacted the county attorney and were advised of the proper statutory procedures for abandonment. Apparently, appellants also received advice from one of the commissioners as to how they might cure any defects in their original petition for abandonment. While appellants did pursue some efforts to have the order of abandonment reinstituted, it is clear that they did not follow prescribed statutory procedures.

On September 4, 1978, appellants filed another petition in accordance with statutory requirements for the abandonment of a second and separate street within their subdivision. The street sought to be declared abandoned was known as First Street. First Street intersected Central Avenue and adjoined the Lionhead Subdivision with several lots of the Southfork Subdivision. A hearing was scheduled for September 5, 1978, regarding this petition. At the hearing, developers of the Southfork Subdivision submitted a letter opposing the request for abandonment because it would block access to their property. The county surveyor also testified that closure of First Street would block access to the Southfork Subdivision and to Lots 3 and 4 of the Lionhead Subdivision.

A compromise was reached between the parties: Central Avenue would remain open as an access to Lots 3 and 4 of the Lionhead Subdivision as well as the Southfork properties, and First Street would be abandoned except for that portion which crossed Central Avenue. The county commissioners adopted this compromise on September 22, 1978, and declared First Street abandoned pursuant to the agreement.

The county surveyor then granted the developers of the Southfork Subdivision permission to construct a gravel access road along Central Avenue, including the northerly 100 feet of the road for which the first abandonment had been invalidated. Appellants brought this action to restrain respondents from authorizing these improvements upon the road. As part of the relief requested, a temporary restraining order was issued by the District Court for respondents to show cause why a permanent injunction should not issue. A hearing was held regarding the matter, and the

court entered findings of fact and conclusions of law. The court held that the attempt to abandon the northerly 100 feet of Central Avenue did not comply with statutory requirements and was void initially. Accordingly, it determined that this portion of the street had never been abandoned. An order relieving respondents from the effects of the temporary restraining order was entered by the court on August 10, 1979. It is from this judgment and order that appellants appeal.

A single issue is raised for our consideration: Were respondents, as Gallatin County commissioners, equitably estopped from reestablishing a portion of Central Avenue as a public roadway where the initial attempt to abandon the roadway did not comply with statutory procedures for abandonment?

Both parties agree in this case that Montana statutes set forth the exclusive method by which county roads must be abandoned. The statutory scheme for the abandonment of county roads is found in sections 7-14-2601 through 7-14-2621, MCA. To initiate proceedings, any ten or a majority of freeholders of a road district petition the board of county commissioners for the abandonment of a particular road. Section 7-14-2601, MCA. Within thirty days after the filing of the petition, the commissioners cause an investigation to be conducted regarding the merits of the petition. Section 7-14-2603, MCA. A public hearing is then scheduled and notice of the hearing is given. Section 7-14-2615(2), MCA. The results of the investigation and the hearing are considered by the commissioners, and a decision is entered whether to abandon the road. Within ten days after the decision, the commissioners cause notice of their decision

to be sent to all owners of land abutting the road for which abandonment was sought. Section 7-14-2604, MCA.

The parties further agree that there must be substantial compliance with these statutes before the doctrine of equitable estoppel can be applied against respondents as commissioners of Gallatin County. The general rule regarding the application of the doctrine of equitable estoppel and the vacation, discontinuance, or abandonment of roads is stated by one authority as follows:

> "While some limitations to its application are to be found, the rule appears to be quite general that where the procedure for the vacation, discontinuance, or alteration of a public street or highway by direct action of public authorities is prescribed by statute, it is necessary to adhere to such procedure in order that the vacation or alteration be effective; . . . nor are the public authorities precluded by principles of estoppel from denying the termination of the existence, or alteration, of the public way in the absence of substantial compliance with the statutory procedure . . ." 175 A.L.R. 760, 762 (1948).

The reluctance to apply equitable estoppel to governmental entities is founded upon public policy considerations. It is generally thought that lands held by the public are to be protected and only disposed of where there has been compliance with the law. The interests of the general public should not be defeated, for example, by the unauthorized or unlawful acts of public agents or officers. See Norman v. State (1979), ___ Mont. _____, 597 P.2d 715, 36 St.Rep. 1093.

The policy of protecting public lands and making statutes the exclusive method for the disposition of public lands is well recognized by our Constitution. Article X, Section 11 of the 1972 Montana Constitution states:

-6-

"(1) All lands of the state that have been or may be granted by congress, or acquired by gift or grant or devise from any person or corporation, shall be public lands of the state. They shall be held in trust for the people, to be disposed of as hereafter provided, for the respective purposes for which they have been or may be granted, donated or devised.

"(2) No such land or any estate or interest therein shall ever be disposed of except in pursuance of general laws providing for such disposition, or until the full market value of the estate or interest disposed of, to be ascertained in such manner as may be provided by law, has been paid or safely secured to the state." (Emphasis added.)

As a result of these policy considerations, we have stated in previous cases that the application of the doctrine of equitable estoppel to governmental entities will be looked upon with disfavor. The doctrine will only be applied in exceptional circumstances or where there is manifest injustice. Von Tobel v. City of Lewistown (1910), 41 Mont. 226, 108 P. 910; Billings v. Pierce Co. (1945), 117 Mont. 255, 161 P.2d 636. We must determine, under the particular facts and circumstances of this case, whether the doctrine should be applied here. That determination, of course, is dependent upon whether there was substantial compliance with Montana statutes regarding the abandonment of roads.

In this case, respondents suggest as one of their arguments that appellants did not obtain a sufficient number of signatures to substantially comply with the requirements of section 7-14-2601, MCA. That statute, as has been previously stated, requires a petition to contain the signatures of either ten or a majority of freeholders of the road district where abandonment is sought. Appellants' petition obviously does not comply with the first part of the statute, since it only contains four signatures.

-7-

It also appears, under the facts presented, that compliance with the second part was impossible. During oral argument, the parties informed us that the entire Gallatin County comprises only one road district, in which there are well over 40,000 residents. A "majority," therefore, would be more than 20,000 signatures. Because of the absurdity of this requirement, appellants suggest that the statute should be construed to require only the signatures of "a majority of those directly affected" by the abandonment. It is urged under such a construction that simply the signatures of those owning land which immediately adjoins the land sought to be abandoned would be sufficient. Although there are several persons owning land on Central Avenue in this case, only three landowners own lots immediately adjoining the northerly 100 feet of the street.

We decline to adopt the interpretation advanced by appellants. Adopting that interpretation would force us to exceed our proper role in the construction of statutes. The role of a court in construing a statute is simply to ascertain and declare its substance and not to insert what has been omitted. Section 1-2-101, MCA. In this connection, the legislative intent to the statute is to be pursued if possible. Section 1-2-102, MCA. Here, the statute simply states that the petition must contain, as one alternative, the signatures of a "majority of freeholders of the road district." The statute does not say "a majority of those directly affected." Nor is there any legislative intent expressed that this was the desire of the legislature.

Further, even if we were to adopt appellants' interpretation, it is doubtful whether this would rid any problems of application. The present problem with applying the

"majority requirement" is that the size of road districts and the number of freeholders therein vary. Depending upon whether there is one or many road districts in a county, it may be reasonable to attempt to obtain a majority in some circumstances while it is unreasonable in others. Similarly, the problem with appellants' proposed construction lies in determining which landowners are directly affected. It is an oversimplification to say that "directly affected landowners" are those who own lots immediately adjacent to the land sought to be abandoned. Conceivably, other landowners besides these are affected by the abandonment.

A number of cases have held that a required number of signatures specified in a statute for the abandonment, vacation or termination of a road is a material element and that the failure to obtain such signatures falls short of substantial compliance. See 175 A.L.R. 760, 771, for an extensive list of cases. For example, where a statute for the vacation of a public highway required the signatures of twelve freeholders of the county, and appellant submitted a petition for vacation containing only one signature, a court held that the board of commissioners was without authority to act with respect to the vacation. Eads v. Kumley (1918), 67 Ind.App. 361, 119 N.E. 219. There the court stated that the commissioners had only such powers as were conferred upon them by statute, and where procedures enunciated by statute were not complied with, the proceeding was a nullity. Eads, 119 N.E. at 221. In dealing with the same statute in another case where seven of seventeen petitioners filed a written withdrawal of their names from a petition for vacation before there was an assumption of jurisdiction, the court held the commissioners were without authority to

assume jurisdiction and consider the matter. Current v. Current (1920), 72 Ind.App. 363, 125 N.E. 779.

In this case, we do not think it was an unreasonable burden for appellants to obtain ten signatures on their abandonment petition. The District Court correctly held that, because there was a failure to substantially comply with the statutes on abandonment, the proceeding was void initially. The commissioners were without authority to act with respect to the abandonment.

Appellants here rely heavily on the fact that county officials and employees were intricately involved in the attempted abandonment. Appellants contend that the county should be estopped from invalidating the abandonment because the acts constituting noncompliance with the statutes were the unilateral acts of the county. County employees prepared appellants' petition providing space for only six signatures, and a county commissioner apparently gave appellants improper advice as to how to cure defects in the petition once the order for abandonment had been invalidated.

Although appellants had, arguably, equal access to the law, we think in general that the public has a right to rely upon the advice and actions of public employees and officials. In this connection, we note that the county attorney properly advised appellants of the statutory procedures for abandonment. Irrespective of the negligence of public employees and officials, however, the foremost consideration in our minds lies with the protection of the public interest. This countervailing public policy has taken on such importance that it is expressed in our Constitution. Where public lands are disposed of and there has been insufficient

compliance with laws providing for their disposition, the public interest must be protected.  In Norman, 597 P.2d at 719, 36 St.Rep. at 1098, we stated:

> "We recognize that it was the negligence of the State's agents that caused the situation which gave rise to this appeal.  However, the interest we seek to protect is that of the citizens of this State to receive the highest value from the sale of the lands their State government holds in trust for them.  Strict compliance with the constitutional and statutory provisions relating to those lands is the best mode to insure that protection.  It is generally conceded that while estoppel may be effected against State government, it may not be asserted where it would interfere with the protection of the public's interest in lands.  [Citations omitted.]"

Accordingly, we hold, without addressing the remaining arguments raised by appellants, that the District Court did not err in failing to apply the doctrine of equitable estoppel against the county.  Appellants have not substantially complied with statutory procedures for abandonment.  Therefore, the District Court has no basis for even considering the application of the doctrine.  The order for abandonment was void initially because the commissioners did not have the authority to act.  The District Court did not abuse its discretion and, accordingly, the judgment of the District Court is affirmed.

_____
                                 Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices