No. 88-98

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

CYRUS ORVILLE WATSON,

        Claimant and Appellant,

    -vs-

KIRK SEEKINS,

        Employer,
    and
STATE COMPENSATION INSURANCE FUND,

        Defendant and Respondent.

APPEAL FROM:   The Workers' Compensation Court, The Honorable
                Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Robert W. Gabriel, Great Falls, Montana

    For Respondent:

        Mike McCarter; Hughes, Kellner, Sullivan & Alke,
        Helena, Montana

Submitted on Briefs:  Aug. 4, 1988

Decided:  October 17, 1988

Filed:

FILED
'88 OCT 17 PM 3 08
CLERK
MONTANA SUPREME COURT

_Ethel M. Harrison_
           Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Claimant appeals an order of the Workers' Compensation Court offsetting his state workers' compensation disability pay by 50 percent of his entire weekly federal disability pay. The issues on appeal are (1) whether the lower court erred in determining that the workers' compensation offset statute, § 39-71-702(2), MCA (1981), was clear and unambiguous on its face; (2) whether the lower court erred in denying Watson attorney fees and costs; (3) whether Watson is entitled to have the statutory penalty of 20 percent assessed against defendant State Fund for unreasonable delay or failure to pay a claim; and (4) whether Watson can argue on appeal that the lower court's construction of the offset statute is unconstitutional when he did not advance that argument at the trial level. We affirm.

On August 31, 1979, appellant, age fifty-six, suffered an industrial accident while working for defendant Seekins which rendered him totally permanently disabled. He then began receiving state disability benefits from the Workers' Compensation State Fund. He was receiving $198.00 per week from the State Fund in 1985. On January 30, 1985, appellant Watson turned sixty-two years old and shortly thereafter applied for early retirement benefits from the Social Security Administration. These monthly benefits, payable at $261.00 per month were lower than full retirement benefits available from Social Security had he chosen to postpone retirement until age sixty-five.

After receiving early retirement benefits for about six months, Watson changed his mind and applied for disability benefits instead. The disability pay was a larger monthly

2

amount but was also subject to the state setoff statute, § 39-71-702(2), MCA (1981). Watson's election of disability pay was accepted by the Social Security Administration, and he began receiving $372.00 per month, an increase of $111.00 per month over the early retirement pay. He also received a lump sum payment of back benefits for disability dating back to the date when he actually turned sixty-two. This back payment effectively made his election to take disability retroactive and eliminated his election to retire early.

In a letter dated August 4, 1986, the Workers' Compensation Division notified Watson that it would be applying the setoff allowed by statute to his weekly disability benefits received from the state government. The setoff (50 percent of his weekly federal benefits) would be deducted from his weekly state disability benefits in order to eliminate the duplication of disability pay. The Division also claimed an overpayment in the amount of $3,461.62, which it wished to recover from Watson.

The result was that Watson suffered a reduction of $42.81 per week from his state disability pay and actually received less monthly money overall due to the setoff than he would have had he stuck with his original election of early retirement.

The Division's computations were as follows:

Step 1

| | monthly | which | | weekly |
|---|---|---|---|---|
| $372.00 | federal disability | resolves itself to | $85.62 | federal disability[1] |

Step 2

| | weekly | | | | |
|---|---|---|---|---|---|
| $ 85.62 | federal disability | reduced by 50% | = | $42.81 | setoff rate |

Step 3

| | weekly | | | | | weekly |
|---|---|---|---|---|---|---|
| $198.00 | state workers' compensation | - | $42.81 setoff | = | $155.19 | workers' compensation |

Watson challenged those computations. He argued that the entire amount of $372.00 disability pay should not be subject to setoff. Rather, he argued, only the $111.00 difference between retirement pay and disability pay should be subject to setoff. Watson argued that he was entitled to retirement pay of $261.00 in his own right which was not subject to setoff and, therefore, only the increased amount of $111.00 could be used in the setoff computations. Under Watson's theory, he would suffer a weekly reduction in state money of only $12.78.

Defendant State Fund argued that the election was a choice entitling Watson to one benefit or the other, but not both. If Watson chose to take disability pay, that pay (the

---

[1]    $372 per month  x  12 = $4,464 per year
$4,464  ÷  365 days = $12.230 per day
$12.230  x  7 = $85.610952 per week
Rounded up in favor of Watson -- $85.62 per week

4

entire amount) was subject to the state statute allowing setoff. State Fund found the statute in question to be plain and unambiguous, stating that where disability pay is given by the federal government it is subject to setoff by the state government.

The Workers' Compensation Court adopted the findings of fact and conclusions of law as determined by the Hearing Examiner and entered its judgment and order on December 21, 1987. The court determined the statute to be clear and unambiguous on its face, affecting the entire amount of federal benefits. Its order provided that the defendant was entitled to an offset in the amount of $42.81 per week based on the entire weekly disability benefits paid to Watson under the Social Security Act. It further found that such an offset would continue for as long as Watson received federal disability pay and that he was neither entitled to the requested attorney fees and costs, nor a 20 percent penalty against the Division for unreasonable refusal or delay in payment. Watson's January 7, 1988, motion for a new trial was denied, and this appeal followed.

Watson's primary issue on appeal is that of statutory construction and legislative intent. Appellant argues that the court misinterpreted the statute; that the statute is ambiguous in that it is susceptible of two interpretations; that where a genuine doubt exists, the ambiguity should be resolved in favor of the injured claimant; and finally that accepting the court's interpretation of the statute would be an unconstitutional violation of the Supremacy Clause, in that it would nullify the effect of the federal disability provisions of the Social Security Act for persons such as Watson.

This Court finds the statute to be clear and unambiguous, affirming the Workers' Compensation Court judgment. Affirmation of the lower court on the merits of the first issue renders the remaining issues of the attorney fees, costs and penalty moot.

## I. INTERPRETATION OF THE STATUTE

The offset statute is § 39-71-702(2), MCA (1981). This statute was amended in 1987 and its successor is § 39-71-702(4). However, it is the statute in effect at the time of the injury that sets the standard by which the benefits to the claimant are to be computed. Trusty v. Consolidated Freightways (Mont. 1984), 681 P.2d 1085, 41 St.Rep. 973. That statute reads in pertinent part as follows:

> In cases where it is determined that periodic disability benefits granted by the Social Security Act are payable because of the injury, the weekly benefits payable under this section [under the state Workers' Compensation Act] are reduced, but not below zero, by an amount equal, as nearly as practical, to one-half the federal periodic benefits for such week, which amount is to be calculated from the date of the disability social security entitlement.

Watson argues that the language, _payable because of the injury_, refers only to the increased amount of $111.00 per month, which is the difference between the early retirement amount and the disability amount. It is his statutory construction that this is the only "fair" way to read the statute and that any other interpretation is perverse. We disagree.

All statutory construction by courts is an attempt to search out the intent legislature. Johnson v. Marias River

6

Electrical Cooperative, Inc. (Mont. 1984), 687 P.2d 668, 41 St.Rep. 1528. This Court's role, then is to let the legislative intent control whenever possible. Darby Spar, Ltd. v. Dept. of Revenue (Mont. 1985), 705 P.2d 111, 42 St.Rep. 1262.

Watson argues his interpretation is the only fair one because it is the one construed consistently with the legislative intent. According to Watson, the legislative intent is to benefit disabled workers more than merely retired workers. Watson cites Freeman v. Harris (5th Cir. 1980), 625 F.2d 1303, and Lindquist v. Brown (8th Cir. 1987), 813 F.2d 884, as authority for construing a statute in favor of the claimant by using legislative intent. However, these cases are of little help in determining the legislative intent for the Montana statute in question.

The Freeman case is not dispositive on this issue and is only similar to the case at bar in that the Freeman court interpreted the legislative intent espoused in two federal offset statutes. In Freeman the claimant received benefits from three sources: federal Social Security, state workers' compensation and federal Black Lung benefits. Because both the workers' compensation and Social Security were offset against the Black Lung award, the claimant ultimately received less under the three programs than he would have under only two programs not so heavily offset.

However, the distinction here is that the federal black lung statute required the claimant to simultaneously pursue state workers' compensation funds which triggered the double offset. The court found the congressional intent expressed in the Social Security Act was that the states would be the primary providers of disability benefits to workers and that the federal government would only assist where state programs

7

were inadequate. The result under double offset was to discourage injured miners from seeking state workers' compensation benefits. That result contravened the congressional intent. Additionally, the court found the corresponding legislative intent behind the Black Lung statute was to replace income for injured workers. These two legislative goals could not be met simultaneously in the Freeman case. Thus, the court resolved the tension by letting both offsets stand as authorized by statute but not so as to exceed 100 percent of the state workers' compensation benefits payable to claimant.

These facts do not help us resolve the question of legislative intent for our statute. The required double offset in Freeman is not analogous to the elective single offset under these facts. Moreover, our statute has already considered the ultimate issue decided in Freeman, that the offset cannot be 100 percent of the benefit, or in the language of the Montana statute, "cannot reduce the benefit below zero."

Likewise, Lindquist is not helpful in the instant case merely because the Lindquist court declared the legislative intent behind the Social Security retirement pay schedule was to encourage people to continue working and postpone retirement.

Claimant also asserts Subsequent Injuries Fund v. Industrial Accident Commission (1963), 217 Cal.App.2d 322, 31 Cal.Rep. 508, as authority for "pro rating" the federal Social Security benefits. By statute, California maintained a fund to compensate industrial injuries which were aggravations of a preexisting injury. The legislative intent was to encourage injured workers to rehabilitate and re-enter the

8

work force. The plaintiff in that case went blind as a result of an industrial accident. It was determined that the resultant blindness was caused 68.25 percent by the preexisting injury. Thus, the Fund was allowed to reduce its payments by 68.25 percent of the Social Security benefits awarded.

However, that California case on quite different facts is not persuasive authority to pro rate Watson's federal benefits and find that 70 percent of his pay is due to retirement and 30 percent is due to injury. We are not inclined to read that into the Montana statute on the basis of a California "pro rata" case interpreting a statute with a totally different legislative intent.

The legislative intent behind the workers' compensation statutes is to replace income to injured workers. The purpose behind the state offset statute is to prevent "over replacement" or duplication of disability pay. Offset has never applied to federal retirement pay.

Everyone is in agreement that under the Montana statute where federal disability benefits are awarded, state setoff occurs. The dispute is how much disability pay should be used to compute setoff: all of it or only part of it. The statute simply does not allow for Watson's formula to exclude a part of the entire award. The words are not there. The role of the Court is not to insert what has been omitted by the statute. Chennaults v. Sager (1980), 187 Mont. 455, 610 P.2d 173. Had the legislature intended an exemption, exclusion, or any other formula to apply to reduce the amount subject to setoff, it is reasonable to assume that it would have expressed it in the statute.

It should be noted here that Watson did not submit evidence that the legislature intended only the difference between the two amounts be considered as disability benefits. Nor did Watson show that the statute had ever been interpreted that way in the past. Absent such evidence, the Workers' Compensation Court properly was reluctant to change the plain reading of the language in order to effect claimant's wishes. Additionally, this Court finds no such evidence in the legislative history of the statute.

Therefore, we conclude that the language in the statute, "payable because of the injury," is not an authorization for the exemption of a part of Watson's federal disability from the state setoff. Thus, the statute is not susceptible of two meanings, and no ambiguity exists.

Lastly, we find that the lower court's interpretation of the statute is not an unconstitutional violation of the Supremacy Clause.

Watson is allowed to advance that argument on appeal when he did not specifically raise it at trial because it is not meant to be an independent constitutional challenge to the statute. Rather, it is an attack on how the lower court construed the statute, which is an inherent theory to his primary argument: that the court erred in interpreting the statute. American Equitable Assurance Co. v. Newman (1957), 132 Mont. 63, 313 P.2d 1023, 1027.

However, Watson's theory is without merit. The state statute does not prohibit Watson from electing to take federal disability pay nor does it preclude him from receiving that pay to which he is entitled under the federal act. Thus, it does not nullify the federal statute. Therefore,

the Montana statute as interpreted by the lower court is constitutional.

It is, however, a likely disincentive for injured workers between ages sixty-two and sixty-five to elect to take the federal funds subject to setoff. As in Watson's case, his choice did not benefit him in the end.

We have considered the statute in question, along with the arguments and authorities advanced by counsel. We conclude that the statute is clear and unambiguous in its plain language. Whether the plain interpretation of this statute is unfair under the particular facts of the Watson case is, regrettably, not for the judiciary.

Judgment affirmed.

_____
Chief Justice

We concur:

_____

_____

_____
Justices

Mr. Justice John C. Sheehy, specially concurring:

I concur with the result of this case, but I cannot concur ~~in the obviously incorrect arithmetic utilized by the Division of Workers' Compensation, nor can I concur~~ in the deviation in application from the basic principles upon which the setoff is allowed under federal and state law.

The only reason that the total disability payments received by Watson under the workers' compensation law of this state maybe offset to any extent by federal payments to him for his total disability is because of federal law. Since Watson has not attained age 65, and is entitled to workers' compensation payments under state law, as well as disability payments under federal law, the combined benefits he receives under both sets of laws cannot exceed 80 percent of his "average current earnings" at the outset of his disability. 42 U.S.C. § 424(a). The federal law further provides that the federal benefits under social security for disability will not be reduced if the state workers' compensation law under which he also receives benefits provides for the reduction of the state benefits to meet the 80 percent maximum. 42 U.S.C. § 424(a)(d).

How this system works was explained in Herzog v. Department of Labor and Industry (Wash. App. 1985), 696 P.2d 1247, where the court said:

> Some recipients of workers compensation disability payments are also entitled to Social Security payments. When this is so, federal law prohibits the combined benefits from exceeding 80 percent of the recipient's average current earnings at the time the disability was suffered. Combined benefits exceeding this level must be reduced. Federal law permits a state to take full advantage of this by permitting the reduction to be taken entirely from the state benefits.. . .

- 12 -

Montana has taken advantage of the federal provision by enacting § 39-71-702(4), MCA, which provides for an offset of the weekly compensation benefits by an amount equal to one-half of the federal periodic benefits for such week.

If we assume that the weekly wages that Watson was receiving at the time of his injury in 1979 was $297 (his weekly workers' compensation benefit was $198, which should be two-thirds of his wages, § 39-71-702 (1979)), then the following computation would be correct to apply in this case:

I.  Determination of the Reduction:

| | |
|---|---|
| Total monthly workers' compensation payments | $   848.57 |
| Add monthly Social Security disability benefits | 372.00 |
| Total | $ 1,220.57 |

| | |
|---|---|
| Subtract 80% wages at time of injury (1272.85 x 80%) | -1,018.28 |
| Amount of Reduction | $   202.29 |

II.  Application of Reduction:

| | |
|---|---|
| Total workers' compensation entitlement | $   848.57 |
| Subtract reduction | -202.29 |
| Total monthly workers' compensation payment | $   646.28 |

III.  Payments (monthly) after Reduction:

| | |
|---|---|
| Social Security disability payment | $   372.00 |
| Workers' compensation disability payment | 646.28 |
| Total permissible payment | $ 1,018.28 |

IV.  Translate to weekly payments:

| | |
|---|---|
| Workers' compensation disability payments $\frac{(\$646.28 \times 7)}{30}$ = | $   150.79 |
| Social Security disability payments $\frac{(\$372 \times 7)}{30}$ = | 86.80 |
| TOTAL Weekly Payments | $   237.59 |

Unfortunately, the above would yield less than money to the claimant than what he is already receiving (due to the difference between annual and monthly computations), but I submit that the foregoing is a proper application of the benefits to which he entitled taking into account federal and state law.

I would affirm the judgment.

_____
                Justice