No. 95-221

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996


THOMAS R. BROEKER,

      Petitioner, Appellant, and Cross-Respondent,

  v.

GREAT FALLS COCA-COLA BOTTLING COMPANY,

      Employer,

  and

STATE COMPENSATION MUTUAL INSURANCE FUND,

      Defendant, Respondent, and Cross-Appellant.

FILED

APR 5 - 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   Workers' Compensation Court of the State of Montana
              The Honorable Mike McCarter, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Lawrence A. Anderson, Attorney at Law,
          Great Falls, Montana

      For Respondent:

          William O. Bronson, James, Gray,
          & McCafferty, Great Falls, Montana

      For Amicus American Insurance Association:

          Jacqueline T. Lenmark, Keller, Reynolds,
          Drake, Johnson & Gillespie, Helena, Montana


             Submitted on Briefs:  February 1, 1996

                   Decided:  April 5, 1996

Filed:

                                     
_____
                      Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court

The petitioner, Thomas Broeker, filed a petition in the Workers' Compensation Court of the State of Montana in which he sought to reduce the amount by which State Compensation Mutual Insurance Fund was offsetting his workers' compensation disability benefits based on his receipt of social security disability benefits. He alleged that cost-of-living adjustments were inappropriately included in the offset computation and that the social security rate against which his benefits were offset should have been indexed to his date of injury, rather than his eligibility date. The Workers' Compensation Court entered an order and judgment resolving the cost-of-living issue in favor of Broeker and the indexing issue in favor of the State Fund. Both Broeker and the State Fund appeal the order and judgment. We affirm the order and judgment of the Workers' Compensation Court.

The issues on appeal include:

1. Did the Workers' Compensation Court err when it concluded that the State Fund could not include social security cost-of-living increases in its calculation of the amount by which Broeker's workers' compensation benefits could be reduced?

2. Did the Workers' Compensation Court err when it concluded that the social security disability benefit by which Broeker's workers' compensation benefits would be offset should be indexed to the date on which he became eligible for social security benefits, rather than the date of his injury?

2

## FACTUAL BACKGROUND

In 1980, Thomas Broeker, a truck driver and refrigeration repairman with a ninth-grade education, suffered an industrial injury when a Coke machine fell on him. His injury arose out of and in the course of his employment with Great Falls Coca-Cola Bottling Company, which was insured by the State Compensation Insurance Fund.

Broeker properly reported his injury pursuant to the workers' compensation law and the State Fund accepted liability for his claim and has paid him benefits since 1980. After his injury, Broeker continued to work intermittently; however, by August 1984, the degree of his disability had worsened and he was no longer able to perform his job. At that time, the State Fund began to pay him temporary total disability benefits, which it continued to pay until June 1, 1992, when his status was converted to permanent total disability. Since 1992, the State Fund has continued to pay Broeker permanent total disability benefits.

On May 30, 1990, Broeker applied for Social Security Disability Benefits and in March 1992, after a hearing, an administrative law judge held that he was entitled to benefits. The judge found that Broeker's period of disability, pursuant to the Social Security Act, began on August 23, 1984. Benefits were awarded retroactive to May 1989. While the payment accrued from May 1989, the initial benefit rate, which was $651 per month, reflected a basic rate indexed to August 23, 1984, plus five

3

cost-of-living increases that had gone into effect between December 1984 and December 1987.

Following the Social Security Administration's determination, the State Fund began to take an offset from Broeker's workers' compensation payments based on his reception of federal social security benefits pursuant to §§ 39-71-701(2) and -702(2), MCA (1979). The amount of the offset was based on the initial amount of the social security disability benefit, $651.50, and amounted to $74.91 per week.

Broeker petitioned the Workers' Compensation Court to reduce the State Fund's offset based on his claim that the State Fund should not be able to include adjustments for inflation in its offset calculation. He also claimed that the State Fund's offset should be based on a social security disability rate indexed to his date of injury, rather than the date on which he became eligible for benefits.

ISSUE 1

Did the Workers' Compensation Court err when it concluded that the State Fund could not include social security cost-of-living increases in its calculation of the amount by which Broeker's workers' compensation benefits could be reduced?

We review the Workers' Compensation Court's conclusions of law to determine whether they are correct. *CNA Ins. Co's. v. Dunn* (Mont. 1995), 902 P.2d 1014, 1016, 52 St. Rep. 981, 982; *Stordalen v. Ricci's Food Farm* (1993), 261 Mont. 256, 258, 862 P.2d 393, 394.

4

The State Fund contends that it did not miscalculate its offset, but simply based it on the initial social security disability benefit Broeker was entitled to receive. And while this benefit included cost-of-living increases, the State Fund has not taken an offset based upon any cost-of-living increases Broeker received since the date of his initial social security benefit. Therefore, the State Fund asserts that it did not act contrary to the offset statutes or this Court's decision in *McClanathan v. Smith* (1980), 186 Mont. 56, 606 P.2d 507.

The offset statute applicable to this case provides:

> In cases where it is determined that periodic benefits granted by the Social Security Act, 42 U.S.C. 301 (1935), are payable because of the injury, the weekly benefits payable under this section are reduced, but not below zero, by an amount equal, as nearly as practical, to one-half the federal periodic benefits for such week.

Sections 39-71-701(2) and -702(2), MCA (1979).

In *McClanathan*, we held that Congress intended that the offset apply only to the primary insurance amount specified pursuant to 42 U.S.C. § 423, and not to cost-of-living increases provided pursuant to 42 U.S.C. § 415. *McClanathan*, 186 Mont. at 64, 606 P.2d at 512. *McClanathan* concerned cost-of-living increases made subsequent to the initial award, and therefore, we did not discuss increases included in the initial award.

Any cost-of-living increases, including those which become a part of the initial award, are governed by the Social Security Act. Because the State Fund has not taken offsets based upon any

5

cost-of-living increases since the initial award, the cost-of-living adjustments at issue here are those built into the Social Security Administration's initial benefit determination in 1992. *See* 42 U.S.C. § 415(i). Pursuant to 42 U.S.C. § 415, the cost-of-living increase is added to the primary insurance amount, and increases which are granted in any year following and including the year the individual becomes eligible for benefits are added to the primary insurance amount "without regard to the time of entitlement to that benefit." 42 U.S.C. § 415(i)(2)(A)(ii)-(iii).

Therefore, although Broeker did not apply for benefits until May 1990, he became eligible for benefits on August 23, 1984 (his disability date), subject to a waiting period, and was entitled to cost-of-living increases which were granted between that 1984 eligibility date and the date his benefits actually commenced. Broeker's commencement date was May 1989 at which time his initial benefit was $651.50 and included five cost-of-living increases granted social security recipients between 1984 and 1988. These increases included a 3.5 percent increase on 12/84; a 3.1 percent increase on 12/85; a 1.3 percent increase on 12/86; a 4.2 percent increase on 12/87; and a 4.0 percent increase on 12/88.

When we decided *McClanathan*, the statutory formula for determination of the primary insurance amount, unlike the version which is now applicable, did not include cost-of-living adjustments. 42 U.S.C. § 415. Therefore, when we decided that case we concluded that:

6

> The benefits to which appellant is entitled under 42 U.S.C. § 423 are disability benefits, not cost-of-living benefits, and are defined as "equal to his <u>primary insurance amount</u> for such month" calculated as though he had attained age 62. It is evident that the provisions of 42 U.S.C. § 424a(d) allowing the states to provide an offset contemplate only the benefits recoverable under 42 U.S.C. § 423, relating to the individual's <u>primary insurance</u> benefits. Therefore, we hold that the state offset may not be used to reduce the benefits accruing to the appellant under the cost-of-living increases provided in 42 U.S.C. § 415.

*McClanathan*, 186 Mont. at 64, 606 P.2d at 511-12 (emphasis added).

Because the definition of primary insurance amount has since changed to include cost-of-living adjustments, we must now determine whether the cost-of-living adjustments included in the primary insurance amount should also be excluded from the offset determination.

Despite the change in the definition of primary insurance amount, the basic benefit for disabled persons is still the amount prescribed by 42 U.S.C. § 415(a) before any cost-of-living increases are added. Any increase to that basic amount is due to an increase in the cost-of-living, which in turn is caused by inflation. For several reasons, inclusion of cost-of-living increases in offset calculations is neither equitable nor necessary. *McClanathan*, 186 Mont. at 64, 606 P.2d at 511. Reasons for exclusion were given by the Colorado Supreme Court in *Engelbrecht v. Hartford Accident and Indemnity Co.* (Colo. 1984), 680 P.2d 231. The court reasoned:

> Allowing an injured worker to keep his cost-of-living increase better protects the worker and gives him a more

7

> reliable source of income. In addition a cost-of-living increase does not result in a double award. The federal government has decided that it will maintain the buying power of social security payments, not that it will provide additional benefits for a particular injury. Because Colorado does not provide [workers' compensation] benefits to keep pace with inflation, there is no double payment.

*Engelbrecht*, 680 P.2d at 233. Like Colorado's Act, the Montana Workers' Compensation Act, at the time of Broeker's injury, did not provide for cost-of-living increases. Therefore, allowing Broeker to keep the cost-of-living increases does not result in an increased benefit or a double award. Moreover, inclusion of cost-of-living increases in offset calculations does not serve the purpose of the offset statute, which we have described as follows:

> The legislative intent behind the workers' compensation statutes is to replace income to injured workers. The purpose behind the state offset statute is to prevent "over replacement" or duplication of disability pay.

*Watson v. Seekins* (1988), 234 Mont. 309, 314-15, 763 P.2d 328, 332.

As noted in Colorado, allowing a claimant to keep that portion of his or her benefits attributable to inflation allows that person to replace income without duplication of benefits.

For these reasons, we conclude that all social security disability cost-of-living increases, whether included in the initial rate or awarded later, should be excluded when the offset against workers' compensation disability benefits is calculated pursuant to §§ 39-71-701(2) and -702(2), MCA (1979). The decision of the Workers' Compensation Court to this effect is affirmed.

8

Did the Workers' Compensation Court err when it concluded that the social security disability benefit by which Broeker's workers' compensation benefits would be offset should be indexed to the date on which he became eligible for social security benefits, rather than the date of his injury?

Broeker contends that the language of the offset statute requires use of an offset based on a social security disability rate indexed to the date of his injury, rather than the date on which he became eligible to receive those benefits. His contention is based on his suggestion that the offset statute is ambiguous when it provides:

> In cases where it is determined that periodic benefits granted by the Social Security Act, 42 U.S.C. 301 (1935), are payable because of the injury, the weekly benefits payable under this section are reduced, but not below zero, by an amount equal, as nearly as practical, to one-half the federal periodic benefits _for such week_.

Sections 39-71-701(2) and -702(2), MCA (1979) (emphasis added). Broeker claims that the phrase "for such week," is ambiguous because it could refer to the date of the claimant's industrial injury; the date of the claimant's disability; or the date of the claimant's ultimate entitlement to Social Security benefits. Broeker asks this Court to conclude that since the statute is ambiguous, it should be interpreted liberally in favor of the claimant so that "for such week" refers to "the week of the injury." _See_ § 39-71-104, MCA (1979).

9

In response to this argument, the Workers' Compensation Court held that:

> However, the Court finds nothing ambiguous about the phrase. None of the proposed interpretations is correct. The provision is express and clear. It provides that "the weekly [workers' compensation] benefits" are to be reduced by "one-half of the federal periodic benefits **for such week**." It is plain from the words and context of the provision that "for such week" refers to the week in which the workers' compensation benefits are paid. The statute requires that the offset be based on actual social security benefits paid during the same week as the workers' compensation benefits are paid.

(Alteration in original.)

We agree. Furthermore, the rule of liberal construction in effect at the time of Broeker's injuries is inapplicable because, as stated, the words of the statute are plain and unambiguous on their face and must be applied as written. *Lovell v. State Comp. Mut. Ins. Fund* (1993), 260 Mont. 279, 285, 860 P.2d 95, 99. Rules of construction applicable to ambiguous statutes do not apply to this statute.

Therefore, we conclude that the Workers' Compensation Court was correct when it held that the amount by which Broeker's workers' compensation benefits should be offset is based on the social security disability benefit as indexed to the date on which he became eligible to receive those benefits.

For these reasons we affirm the order and judgment of the Workers' Compensation Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

11